IN THE CIRCUIT COURT OF LONOKE COUNTY, ARKANSAS

KENDRA PARKER
Individually and on behalf of all others
similarly situated

2011 APR 1 PM 3: 13

VS.          CASE NO.   CV-11-226

PHH MORTGAGE CORPORATION
METROPOLITAN NATIONAL BANK                          DEFENDANTS

## COMPLAINT

  Comes now the Plaintiff, Kendra Parker, individually and on behalf of all others similarly situated, by and through her attorneys, Steven A. Owings and the Owings Law Firm, and for her complaint, states as follows:

  **I.  STATEMENT OF THE CASE.**

  1.  In August, 2010 Kendra Parker obtained a mortgage on her and her husband's new home from Metropolitan National Bank ("Metropolitan").

  2.  The loan documents disclosed that the mortgage would be assigned, although the assignee was not known at the time of closing. Because the assignee was not known at the time of closing, and because Metropolitan told Ms. Parker the assignment might take a few weeks, the Parkers tendered a check for payment in full of the first month's mortgage payment to Metropolitan. Metropolitan promised to forward the Parkers' mortgage payment when the assignee was known.

  3.  The alleged assignee of the Parkers' mortgage is PHH Mortgage. However, PHH never recorded any interest in the Parkers' property in Lonoke County at the time of assignment as strictly required by A.C.A. § 18-12-209, A.C.A. § 18-40-101, A.C.A. § 18-40-106, and A.C.A. § 18-40-109.

4.      Metropolitan forwarded the mortgage payment as it previously promised. Proof that the payment was received by PHH is attached to this Complaint as Exhibit 1 and Exhibit 2.

5.      Kendra Parker made each and every mortgage payment on time.

6.      Within a few months, PHH's account statements began to show serious errors in recording and applying Kendra Parker's mortgage payments.

7.      Due to its own errors, PHH began to assess false and fraudulent late charges, refused to take any action to correct Kendra Parker's account, issued false credit reports to the three credit reporting agencies, and finally engaged the services of a law firm, Shapiro and Kirsch, LLP, of Memphis, to send letters threatening foreclosure.

8.      This complaint alleges that the acts of PHH are not isolated acts or innocent mistakes, but rather that this is PHH's pattern and practice of business when servicing loans, and that PHH uses these deceptive and abusive business practices to extort fraudulent fees from homeowners using the threat of foreclosure to compel payment of the fees.

9.      Despite many calls by Kendra Parker to PHH, this corporation has consistently failed and refused to correct its accounting errors, and errors in reporting to the three credit reporting agencies.

10.     PHH made several promises to take corrective action but failed to live up to a single promise. A reasonable inference is that PHH never intended to take any corrective action, but rather intended to continue to generate fraudulent fees for as long as possible.

11.     PHH does not have a legal right to foreclose on Kendra Parker's property. PHH Mortgage Corporation has not provided, and cannot provide, any evidence that it is a valid party in interest or that it has any standing to assert claims against the Plaintiffs' property in this jurisdiction.

2

PHH failed to record any purported interest in the chain of title for Kendra Parker's property.

12.     Metropolitan Bank is named as a defendant because it is listed in Ms. Parker's chain of title as a mortage lien holder and therefore is a necessary party. The only claims asserted against Metropolitan seek declaratory relief determining whether Metropolitan Bank retains any interest in Ms. Parker's real property or has the right to assert any claims against that property.

## II.     PARTIES

13.     Plaintiff Kendra Parker at all relevant times was a resident of Lonoke County, Arkansas.

14.     Putative class members are all residents of the State of Arkansas.

15.     Separate Defendant PHH Mortgage Corporation is a foreign for profit corporation organized and authorized under and by virtue of the laws of the State of New Jersey, with its principal place of business located at 1 Mortgage Way, Mt. Laurel, NJ 08054.

16.     PHH Mortgage Corporation has numerous other addresses relevant to this complaint, including, without limitation: (1) Mortgage Service Center, PO Box 5459, Mt. Laurel, NJ 08054; (2) Mortgage Service Center, P.O. Box 5452, Mt. Laurel, NJ 08054; (3) Mortgage Service Center, 2001 Leadenhall Rd., Mt. Laurel, NJ 08054;  (4) Mortgage Service Center, 5505 N. Cumberland Ave., Chicago, IL 60656; (5) PHH Mortgage, P.O. Box 0112, Palatine, IL 60055; and (6) PHH Mortgage, 2001 Bishops Gate Boulevard, Mt. Laurel, NJ 08054.

17.     PHH Mortgage Corporation's registered agent for service in the State of Arkansas is The Corporation Service Company, 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, AR 72201.

18.     PHH Mortgage Corporation has a number of registered fictitious names, or d/b/a's,

3

in the State of Arkansas. These are Cendant Mortgage, Century 21 Mortgage, Coldwell Banker, Mortgage, Domain Distinctive Property Finance, ERA Mortgage, Instamortgage.com, Mortgagequestions.com, Mortgagesave.com, and PHH Mortgage Services.

19.     Separate Defendant Metropolitan National Bank has its headquarters in Little Rock, Pulaski County, Arkansas, located at 425 West Capital, Little Rock, AR 72202.

20.     As a nationally chartered bank, Metropolitan National Bank does not have a registered agent for service of process, but service may be effectuated by service upon any officer or director of the bank at any location of the bank within the state, or as prescribed by a court of competent jurisdiction.

### III.   JURISDICTION AND VENUE

21.     The real property that is the subject matter of the above styled and numbered case is located in Austin, Lonoke County, Arkansas.

22.     The Plaintiff is a resident of Lonoke County, Arkansas and the putative class members are residents of the State of Arkansas, therefore venue and jurisdiction are properly in this Court.

23.     Defendants have regular business contacts with this venue in that they service mortgages in Lonoke County that affect the real property of the residents of Lonoke County, and avail themselves of this county's courts to pursue judicial and statutory foreclosure actions against property located in Lonoke County.

24.     This Court has jurisdiction over the parties and subject matter herein and venue is proper.

### IV.   STATEMENT OF FACTS

4

*PHH's Deceptive Use of Foreclosure to Wring Wrongful Fees Out of Customers*

25.     PHH is engaged in a deceptive practice of misusing Arkansas's foreclosure process to extort payment of false or fraudulent late fees, attorney fees, and miscellaneous fees from Arkansas residents.

26.     PHH intentionally created a payment processing system riddled with accounting errors that results in false and fraudulent claims for fees associated with its mortgage servicing practices. In conjunction with this deceptive business practice, PHH uses false credit reporting and unfounded threats of foreclosure proceedings as leverage to collect the false and fraudulent fees.

27.     When a customer makes a payment that PHH "loses" or otherwise fails to apply to the customer's account correctly, PHH lists that customer's account as delinquent and starts sending delinquency notices to the mortgagor.

28.     Even in the face of clear evidence that PHH's account is incorrect, PHH persists in sending delinquency notices to the customer.

29.     Once an account becomes delinquent, even when the borrower provides evidence that they have made their payments on time, PHH charges the borrower a late fee for the "delinquency", which PHH applies to the borrower's mortgage account.

30.     PHH files false and erroneous negative credit reports with the three credit reporting agencies damaging the homeowner's credit rating.

31.     PHH escalates their fraudulent demands by assigning the account to a nearby (Memphis) foreclosure mill law firm, in this case Shapiro and Kirsch, LLP, to exert additional pressure on the mortgagor to pay PHH's fraudulent fees and charges or face the threat of foreclosure.

32.     Once PHH assigns the account to a foreclosure law firm, it immediately appends

attorney fees to the account balance, and continues to charge those fees to the borrower's mortgage account as the foreclosure process escalates.

33.     In concert with the work of its foreclosure lawyers, PHH heightens its collection efforts, sending numerous letters demanding that the homeowner bring his or her account current or take steps to modify their loan.

34.     If a borrower refuses to pay all amounts PHH claims are past due, including all fees PHH has added to their mortgage account, PHH forecloses on their property.

35.     A diligent homeowner like Kendra Parker, who makes all of her monthly mortgage payments on time, can – as a result of PHH's payment processing and fee generating schemes – have her credit ruined, be forced to pay exorbitant fees that never should have been incurred in the first place, and face the threat of foreclosure.

*PHH's Deceptive Use of Foreclosure: Lack of Standing - Lack of Right*

36.     It is the practice of PHH, the alleged assignee of the Parker mortgage, to fail or refuse to file the mortgage assignment in the court records of Arkansas counties, including Lonoke County's Court records. Therefore PHH lacks standing to foreclose on the Parker property. On information and belief , PHH has repeatedly foreclosed on real property in Lonoke and other Arkansas counties despite the fact that PHH does not appear in the chain of title and therefore has no legal right to foreclose.

37,     PHH has a pattern of using false and deceptive business practices against homeowners and the courts of the State of Arkansas by falsely claiming a right to foreclose on property in which it has no legal title, no recorded interest, and no right to foreclose.

38.     PHH's motive and purpose in perpetrating this deception is a scheme to collect false

6

and fraudulent fees through the extortionate use of threats of foreclosure and false credit reporting solely for the purpose of generating a high volume of fees and fee income.

39.     PHH's deception constitutes a deceptive trade practice, fraud, and abuse of process. Fees collected through this practice constitute conversion and should be remitted because they PHH is unjustly enriched.

40.     A mortgage is comprised of a deed of trust and a promissory note.

41.     The deed of trust is the document recorded in the county clerk's real estate records division and provides the holder with the legal title necessary to foreclose on a property if the homeowner defaults on his or her obligations under the promissory note.

42.     Instead of complying with Arkansas property laws, PHH apparently records its claim of interest in the real property with the Mortgage Electronic Registration Systems, Inc. (MERS), a private system that operates outside of the regulation of any state's property laws.

43.     Plaintiff conducted a title search on her property located in Lonoke County and cannot find any record of PHH's interest in her real property.

44.     PHH is not listed as a recorded beneficial party in interest on Plaintiff's mortgage deed.

45.     PHH does not have standing to assert any interest in real property in Arkansas absent proof of compliance with title recording statutes. In analogous cases, the Arkansas Supreme Court twice held that MERS does not have standing to assert any interest in real property in Arkansas where it failed to comply with Arkansas's recordation requirements for transferring mortgage obligations from original lenders like Metropolitan National Bank to mortgage servicing companies like PHH. Mortgage Electronic Registration System, Inc. v. Southwest Homes of Arkansas, 2009

7

Ark. 152, 301 S.W.3d 1 (2009), <u>Wetzel v. Mortgage Electronic Registration Systems, Inc.</u>, 2010 Ark. 242 (2010).

46.     PHH's threats of foreclosure against Plaintiff and members of the proposed class are based on the deceptive and false assertion that it has legal title to the property of Plaintiff and the class.

47.     As detailed *infra* below, this complaint seeks declaratory relief on behalf of Plaintiff and the proposed class that (1) PHH has no contractual right to foreclose on mortgaged property where it cannot prove a default on mortgage payments, and (2) PHH has no legal right to foreclose on mortgaged property where it has no interest in the property recorded in the court of the county where the property is located, both of which propositions are well-settled tenets of property and contract law in Arkansas.

*Facts as to Plaintiff Kendra Parker*

48.     In July of 2010, Plaintiff entered into a mortgage agreement with Metropolitan National Bank of Little Rock, Arkansas ("Metropolitan"), concerning her real property located at 171 Crystal Lake Road, Austin, Arkansas 72007.

49.     In the original loan documents and closing documents, Metropolitan reserved the right to assign, sell or transfer the servicing of the loan to another party after advance notice to Kendra Parker of the assignment. However, there was no third party buyer at the time Kendra Parker signed the mortgage.

50.     In August 2010, Metropolitan sold the Plaintiffs' mortgage to P.H.H. Mortgage Corporation ("PHH"), and PHH notified Plaintiffs that they acquired Plaintiffs' mortgage on August 27, 2010. PHH's letter explaining their acquisition of the Plaintiffs' mortgage is attached hereto as

8

Exhibit 3.

51.     In August of 2010, PHH failed to promptly establish an account to service Kendra

Parker's mortgage and did not provide any notice to Kendra Parker that they were servicing her

mortgage loan until August 27, nearly 30 days after Kendra Parker's first mortgage payment was

due.

52.     Due to ambiguities in PHH's August 27 letter, shown in Exhibit 3, the Plaintiff was

unable to determine where to send her first mortgage payment, so she contacted a Metropolitan

employee, who contacted PHH and confirmed payment details for the first mortgage payment with

PHH.

53.     Metropolitan agreed to mail the Plaintiff's first mortgage payment check, drawn on

the Plaintiff's bank account and signed by the Plaintiff's husband, Todd Parker, to PHH on the

Plaintiff's behalf.

54.     Plaintiff delivered a check in the amount of $1,111.87 to Metropolitan, which a

Metropolitan representative endorsed to PHH and then mailed to PHH via UPS.  A copy of this

check, reflecting its assignment to PHH, is attached hereto as Exhibit 4.

55.     Ms. Parker's check was delivered to PHH on September 9, 2010.  (This payment is

referred to as "the August Payment").  A PHH employee named Lara signed for the August Payment.

See Exhibit 1 and Exhibit 2.

56.     The August Payment was never applied to Plaintiff's mortgage account.

57.     In September, 2010, Kendra Parker set up an automatic "bill pay" service on her bank

account to automatically make her mortgage payments on the 15th of each month, or the next

business day thereafter.

58.     On September 17, 2010, Plaintiff bank account made an automatic electronic payment in the amount of $1,111.86 to PHH ("the September Payment"). A PHH online account record, showing all electronic payments along with months the payments were applied is attached hereto as Exhibit 5. Kendra Parker's Bank of America account electronic confirmation of the September Payment is attached hereto as Exhibit 6.

59.     PHH applied the September Payment to the Plaintiff's amount due for the month of August. See Exhibit 5.

60.     On October 15, 2010, Plaintiff's bank account made an automatic electronic payment in the amount of $1,111.86 to PHH ("the October Payment"). See Exhibit 5. Kendra Parker's Bank of America account electronic confirmation of the October Payment is attached hereto as Exhibit 7.

61.     PHH applied the October Payment to the Plaintiff's amount due for the month of September. See Exhibit 5.

62.     Plaintiff's November statement began to show serious accounting errors, claiming that Plaintiff had missed payments in August and October, despite the fact that PHH's own online account statement showed PHH's receipt of the October Payment. See Exhibit 5. Plaintiff's November 2010 mortgage statement is attached hereto as Exhibit 8.

63.     On November 5, November 16, and November 24, PHH sent Plaintiff letters threatening to foreclose on her property. The November 5 letter is attached hereto as Exhibit 9. The November 16 letter is attached hereto as Exhibit 10. The November 24 letter is attached hereto as Exhibit 11.

64.     The November 5 letter indicates that Kendra Parker's account was past due and gives advice "to assist you in bringing your loan current", despite the fact that Kendra Parker made, and

PHH accepted, each and every payment she owed PHH up to that date. See Exhibit 9.

65.    . The November 16 letter falsely states that Kendra Parker's mortgage was past due since October 1, 2010 and demanded payment of $2,261.80 was due in certified funds "[t]o AVOID FORECLOSURE", despite the fact that Kendra Parker made, and PHH accepted, each and every payment she owed PHH up to that date. This amount includes $38.08 in fraudulently assessed late charges. See Exhibit 10.

66.    The November 24 letter states that Plaintiff's mortgage "remains past due and unpaid since October 1, 2010", and advises that "[c]ontinued delinquency could result in legal action (Foreclosure) taken against you resulting in the loss of your home." The letter goes on to request that Plaintiff "take action immediately" to avoid foreclosure, despite the fact that Kendra Parker made, and PHH accepted, each and every payment she owed PHH up to that date. See Exhibit 11.

67.    In the middle of November 2010, Plaintiff's husband, Todd Parker, attempted to use PHH's online account management system to make the couple's November mortgage payment, but the PHH system would not allow him to make a payment.

68.    Todd Parker called PHH to discuss the accounting errors and the online system's failure to accept his payment and was asked to give PHH "a few days to research" and told that PHH would call him back. PHH never called.

69.    Finally, on November 30, 2010, Plaintiff's husband, Todd Parker, called PHH and demanded that they allow him to make the couple's November mortgage payment over the telephone. Todd Parker made a payment over the telephone, using a process known as a "telephone check", in the amount of $1,111.86 ("the November Payment"), and was also required to pay an additional fee of $17.50, as a "convenience" fee for making a telephone payment. See Exhibit 5.

11

70.    PHH initially accepted the November Payment on November 30, 2010 but later refused to apply it to Kendra Parker's account and listed it on Kendra Parker's account as "Bank Rejected Payment" on December 3, 2010. See Exhibit 5. PHH charged Kendra Parker a "returned funds fee" to return the November Payment.

71.    Kendra Parker confirmed with Bank of America that her and her husband's bank account had sufficient funds to cover the transaction and determined that "Bank Rejected Payment" meant that PHH, and not her own bank, had rejected the payment.

72.    After learning that PHH had rejected the November Payment, Todd Parker called PHH during the first week of December 2010 and spoke with a PHH employee or manager named Russell Springer. During this call, Springer told Todd Parker that PHH would not accept any further payments on Kendra Parker's mortgage until they "sort this thing out" and advising the Parkers to stop making their mortgage payments.

73.    During his phone call with Todd Parker, Springer had the UPS tracking documents for the "missing" August Payment, showing a PHH employee had signed for the August Payment, in his hand. He promised to research the matter and call the Parkers back.  Springer did not call the Parkers back and failed to respond to numerous messages they left on his voice mail over the ensuing 6 weeks.

74.    Plaintiff was wary of PHH's repeated failure to live up to their promises and resolved to continue making her mortgage payments. So, on December 30, 2010, Plaintiff sent a check to PHH in the amount of $1,200, which included fraudulent late fees appended to Plaintiff's account for PHH's accounting error ("the December Payment"). A Bank of America online banking "Transaction Details" form reflecting this payment is attached as Exhibit 12.

12

75.     PHH cashed the December Payment, but then mailed a separate check to the Plaintiff on January 18, 2011, refunding the December payment because PHH had concluded that the Plaintiff was in default on her mortgage and had assigned her account to the foreclosure law firm Shapiro & Kirsch. A copy of PHH's letter enclosing the refund check to Plaintiff is attached as Exhibit 13.

76.     In January, 2011, Plaintiff sent three checks to PHH for November 2010, December 2010, and January 2011. A computer screen capture image reflecting a payment of $2,223.74 from Plaintiff's SunTrust account is attached as Exhibit 14; a Bank of America online banking "Transaction Details" form reflecting a third payment of $1,111.86 is attached as Exhibit 15.

77.     Since October 2010, Plaintiff Kendra Parker, her husband Todd Parker, and at least two Metropolitan employees, have been in regular and frequent contact with PHH employees and managers, seeking to have PHH's accounting errors rectified and fraudulent fees removed. Evidence of this regular contact is the following:

        a.      In October, 2010, and again on December 2, 2010 and December 10, 2010, a Metropolitan employee, Stefanie Lyles, faxed PHH a copy of the August Payment check and UPS tracking document showing that PHH received and signed for the August Payment on September 9, 2010. Notes kept by Hollie Wolfe in the ordinary course of business concerning Metropolitan's file for the Parkers, reflecting Metropolitan's efforts on PHH's behalf, are attached hereto as Exhibit 16;

        b.      Stefanie Lyles also placed several calls with PHH's service center about the Kendra Parker's initial payment. See Exhibit 16. A letter from Stefanie Lyles discussing her work on the Parkers' behalf is attached as Exhibit 17;

        c.      A second Metropolitan employee, Hollie Wolfe, called PHH's Russell Springer in December 2010 and then three times on January 25, 2011 to determine why PHH had

13

begun to move Kendra Parker's home into foreclosure. See Exhibit 16;

      d.    Since October, both Kendra and Todd Parker, as well as Metropolitan employees, have made numerous calls to PHH asking PHH to correct their accounting error.

    78.    Rather than correct the problem, PHH has engaged in a series of escalating threats and misrepresentations. Evidence of PHH's threats and misrepresentations include the following:

      a.    PHH has repeatedly told Kendra Parker, Todd Parker, and Metropolitan representatives that they would "research" the matter, but to date have sent only letters indicating that PHH believes Kendra Parker's account is delinquent despite the fact that she has made each and every payment she owed on the account on time;

      b.    PHH filed negative reports about Kendra Parker with each of the three credit reporting bureaus reflecting a past due balance dating to August of 2010 despite the fact that this is false credit reporting. A copy of Kendra Parker's Experian Credit Report is attached as Exhibit 18;

      c.    PHH assigned the Kendra Parker's file to their foreclosure division and retained the law firm of Shapiro and Kirsch, LLP to foreclose on Plaintiff's property. Two letters from Shapiro and Kirsch, LLP explaining that PHH intends to foreclose on Plaintiff's property are attached hereto as Exhibits 19 and Exhibit 20;

      d.    Applied attorneys' fees for PHH's wrongful attempt to foreclose on Plaintiff's property, late fees for PHH's accounting error to Plaintiff's mortgage account, and returned item fees for returning Plaintiff's mortgage payments after Plaintiff's alleged delinquency. Copies of Plaintiff's account statements reflecting these fraudulent fees are attached hereto as Exhibit 8, Exhibit 21, Exhibit 22, and Exhibit 23.

    79.    As of the date this complaint was filed, PHH has refused to admit that any

"delinquency" on the Plaintiff's account was due to PHH's own payment processing error.

80.    As of the date this complaint was filed, PHH has failed to correct its erroneous items on Plaintiff's credit reports with the three credit reporting bureaus, although it has sent Kendra Parker a letter making yet another empty promise, this time promising to correct negative reports on her credit.

81.    While shopping online for Christmas presents in December 2010, after PHH made its false credit claims on Kendra Parker's credit reports, Kendra Parker applied for credit and was denied credit.

82.    On March 12, 2011, Kendra Parker applied for a credit card in order to shop online at Best Buy's website. Her credit application was denied.

83.    After PHH made its false credit claims, Kendra Parker's credit limit on her Mastercard was reduced from $15,000 to $5,000.

84.    On information and belief, PHH continues to include wrongful fees on Plaintiff's account that can only be revealed by a full accounting and amortization schedule on the Plaintiff's mortgage loan.

85.    PHH has no contractual right to foreclose on Kendra Parker's home because the Kendra Parker's account is current.

86.    Defendant PHH has no legal right to foreclose on Kendra Parker's home because PHH is not the mortgagee and has no security interest or any other recorded property interest in the above described property, and has no right at law or in equity to foreclose on Kendra Parker's property.

87.    PHH failed and refused to provide an accounting.

15

## V.   CLASS ACTION ALLEGATIONS

88.     Plaintiff's experience is not unique but is typical and is the natural consequence and end result of PHH's loan servicing system, which is intentionally designed to generate as many fees as possible, even when there is no basis for the fee, then use the threat of foreclosure and fraudulent negative credit reporting as a weapon to force homeowners to pay excessive fees or face the prospect of foreclosure.  Upon information and belief, this is a business pattern and practice used by PHH throughout Arkansas and the United States.

89.     Plaintiff brings this action on her own behalf and on behalf of a class of all other persons similarly situated (the "Class"), pursuant to the provisions of Rule 23 of the Arkansas Rules of Civil Procedure.

90.     Plaintiff seeks certification of a class of Arkansas citizens who were charged illegal and excessive loan servicing fees, defined as follows:

(a)     All residents of the State of Arkansas who (1) were charged illegal and excessive loan servicing fees by PHH, and (2) paid the illegal and excessive loan servicing fees;

(b)     A subset of all residents of the State of Arkansas who were the victims of false credit reporting by PHH.

91.     Excluded from the proposed Class are defendants and any person, firm, trust, corporation or other entity related to or affiliated with any defendants.

92.     The Class is composed of hundreds or thousands of Arkansas residents, the joinder of which in one action would be impracticable. The disposition of the claims of the proposed class members through this class action will benefit both the parties and the Court. The identities of individual members of the Class are readily ascertainable through the defendants' billing records.

16

93.     There is a well-defined community of interest in the questions of law and fact involved affecting the members of the Class. The questions of law and fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

a)      Whether PHH engaged in assessing false charges in connection with mortgages and its loan servicing activities in Arkansas;

b)      Whether PHH's business practices are fraudulent, deceptive, unlawful and/or unfair in violation of Arkansas' Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, et seq.;

c)      Whether PHH engaged in false credit reporting of illegal, unlawful and excessive fees and charges in connection with its mortgage and loan servicing activities;

d)      Whether the plaintiffs and the Class members are entitled to restitution of all amounts acquired by defendants through their common, uniform and deceptive scheme;

e)      Whether plaintiffs and the Class members are entitled to injunctive relief requiring the disgorgement of all wrongfully collected fees by PHH;

f)      Whether plaintiffs and the Class members are entitled to prospective injunctive relief enjoining PHH from continuing to engage in the fraudulent, deceitful, unlawful and unfair common scheme as alleged herein; and

g)      Whether plaintiffs and the Class members are entitled to recover compensatory and punitive damages as a result of the defendants' wrongful scheme.

94.     Plaintiff asserts claims that are typical of the Class. She was targeted by PHH for assessment of fraudulent fees and charges, she was subjected to PHH's standardized business practices, and she paid excessive fees under threat of foreclosure. Plaintiff and the Class members

17

have similarly suffered harm arising from PHH's violations of the law as alleged in this complaint.

95.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent.  Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff's interests are not antagonistic to those of the Class members.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class litigation.

96.     A class action is superior to other available means for the fair and efficient adjudication of Plaintiff's and the Class members' claims.  Plaintiffs and members of the Class have suffered irreparable harm as a result of defendants' fraudulent, deceitful, unlawful, and unfair conduct.  Because of the size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.  Absent the class action, the Class members will continue to suffer losses, the violations of the law described herein will continue without remedy, and defendants will be permitted to retain the proceeds of their deceptive and misleading business practices.  Defendants continue to engage in the unlawful, unfair, and unconscionable conduct that is the subject of this Complaint.

## VI.     CAUSES OF ACTION AND RELIEF REQUESTED

### a.     Declaratory Relief

97.     Plaintiff restates and realleges the preceding paragraphs of the Complaint as though set out here word for word.

98.     Plaintiff made each of her mortgage payments on time and as a result PHH has no contractual right to foreclose on Plaintiff's property.

99.     PHH does not appear in Kendra Parker's chain of title and therefore has no legal

title, no possessory interest, no right of foreclosure and no right to receive mortgage payments.

100.   Although Plaintiff avers that PHH has no legal right to foreclose on Plaintiff's property because PHH does not and never has possessed any legal title or security interest in Plaintiff's property, PHH, in attempting to foreclose on Plaintiff's property, represents that it is exercising a right to foreclose on Plaintiff's property.

101.   Plaintiff seeks a declaration by this Court that (1) PHH has no right to seek foreclosure of Plaintiff's property under the original mortgage contract when Plaintiff has made all her mortgage payments, and (2) PHH has no legal right to seek foreclosure of Plaintiff's property under Arkansas law because it possesses no recorded beneficial interest or legal title in the property.

102.   Plaintiff asks the Court for declaratory relief finding that Metropolitan Bank retains no interest and no lien upon Ms. Parker's real property.

**b.   Damages for Violations of Arkansas Deceptive Trade Practices Act**

103.   Plaintiff restates and realleges the preceding paragraphs of the Complaint as though set out here word for word.

104.   Defendants' actions in connection with their scheme to boost and guarantee fee revenue as described in this Complaint, constitute unfair and deceptive acts and practices in or affecting commerce, for purposes of Arkansas's Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, et seq.

105.   Each Plaintiff is an "individual, organization, group, association, partnership, corporation, or any combination of them," for purposes of Ark. Code Ann. § 4-88-102(4), who has entered into a mortgage with PHH Mortgage Corporation and been charged wrongful fees, which

19

PHH Mortgage Corporation then attempted to secure by adverse credit reporting and threats of foreclosure on their property.

106.   Each Defendant is an "individual, organization, group, association, partnership, corporation, or any combination of them" for purposes of Ark. Code Ann. § 4-88-102(4).

107.   Plaintiff and members of the proposed class have been injured as a result of Defendants' activities which violate the Arkansas Deceptive Trade Practices Act. Specifically, Plaintiffs have been forced to make payments attributable to wrongful fees applied to their mortgage balances, even though they never incurred those fees under the original mortgage contracts.

108.   Defendants' conduct constitutes false, misleading and/or deceptive practices within the meaning of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, *et seq.*, specifically, § 4-88-107.

109.   Plaintiff and members of the proposed class are entitled to actual damages and reasonable attorney's fees under Arkansas' Deceptive Trade Practices Act, § 4-88-101, et seq.

**c.   Damages for Conversion**

110.   Plaintiff restates and realleges the preceding paragraphs of the Complaint as though set out here word for word.

111.   The acts of Defendant constitute the tort of conversion under Arkansas law through PHH's unlawful exercise of dominion over the personal property owned by Plaintiff and class members, and Plaintiff and class members were damaged as a proximate result of those tortious acts.

112.   Plaintiff and class members ask the Court for damages for the tortious acts of conversion committed by Defendants.

**d.   Breach of contract and breach of the covenant of good faith and fair dealing.**

113.    Plaintiff restates and realleges the preceding paragraphs of the Complaint as though set out here word for word.

114.    Metropolitan entered into a mortgage agreement with Kendra Parker and PHH claims to be the assignee of that contract. If PHH can prove that it holds the mortgage, it will be bound by all the terms and conditions of that contract and is liable for all breaches of that contract.

115.    PHH has failed to register any assignment, or any other interest, in the chain of title to Plaintiff's property, therefore it has no right to collect payments or foreclose.

116.    If PHH is able to prove that it has any interest in Plaintiff's property by virtue of an assignment, it has utterly failed to perform its duties under the mortgage contract, it is in breach of that contract, and the Plaintiff has suffered damages as a proximate result of Defendant's breach.

117.    Under the terms of Kendra Parker's mortgage, the Mortgagee and its assignees are expressly prohibited from initiating any foreclosure action, making negative credit reports about Kendra Parker, or beginning delinquency collection actions against Kendra Parker unless Plaintiff defaults on her obligations under the mortgage.

118.    PHH breached these contractual provisions by initiating delinquency and foreclosure actions against Kendra Parker and made negative reports on Kendra Parker's credit reports.

119.    PHH knew or should have known that its conduct would naturally result in damage to Plaintiff, but it persisted in reckless disregard of the consequences, entitling Plaintiff to punitive damages.

120.    Plaintiff asks the Court to find PHH in breach of its contractual obligations to Plaintiffs and to award actual damages, consequential damages, punitive damages, attorney fees, and costs incurred in this action.

121.   PHH has a fiduciary duty to Plaintiff and members of the proposed class and is in breach of that duty.

122.   More specifically, PHH has a duty to manage its loan accounts competently and to refrain from taking actions that will have an adverse impact on its customers' financial interests and property ownership without reason.

123.   PHH breached its fiduciary duties to Plaintiff when they published false credit reports about Plaintiff's account with all three credit reporting agencies, and authorized Shapiro and Kirsch, LLP to pursue foreclosure on the Plaintiff's property.

124.   Plaintiff has sustained actual damages as a direct and proximate result of PHH's breach of their fiduciary duty in that Plaintiff has suffered emotional trauma, lost countless hours of time that could have more effectively been devoted to her careers, been threatened with foreclosure, and experienced the pain, suffering, and embarrassment of negative credit reports and a foreclosure action on her home.

125.   PHH knew or should have known that its conduct would naturally result in damage to Plaintiff, but it persisted in reckless disregard of the consequences, entitling Plaintiff to punitive damages.

126.   Plaintiff asks the Court to find PHH in breach of its fiduciary duty to Plaintiffs and award actual damages, punitive damages, attorney fees and costs incurred in this action.

127.   Every contract imposes upon each party a duty of good faith and fair dealing in its performance and in its enforcement. This duty is an implied promise between the parties that they will exercise good faith in performing their obligations under the contract.

128.   PHH has breached the covenant of good faith and fair dealing by the following acts:

22

    a.     Failing to correct Plaintiff's mortgage account after being provided with clear evidence on numerous occasions by Plaintiff and Metropolitan that they had made an error in accounting for Plaintiff's payments;

    b.     Retaining a law firm to initiate foreclosure proceedings against the Plaintiff after receipt of ample evidence indicating that any alleged arrearage is due to PHH's own payment processing mistake;

    c.     Publishing negative credit reports concerning the Plaintiff's mortgage account with all three credit reporting agencies after receiving ample evidence indicating that any alleged arrearage on the account is due to PHH's own payment processing mistake.

    d.     Initiating its foreclosure process against Plaintiff, including but not limited to refusing payments under the mortgage, returning payments, sending threatening letters, and appending fees to Plaintiff's mortgage account.

    e.     Returning or refunding Plaintiff's mortgage payments to increase the aggregate fees PHH could later charge to Plaintiff's account.

129.    PHH's actions have directly and indirectly prevented, hindered, or delayed the Plaintiff's performance of the mortgage contract.

130.    As a result of PHH's breach of the covenant of good faith and fair dealing, Plaintiff has suffered damages that her mortgage contract was written to protect against, thereby depriving Plaintiff of the value of her bargain.

131.    Namely, Plaintiff has suffered a diminution in her credit rating that her on time payments on her mortgage aimed to prevent; Plaintiff has received threatening letters from Shapiro and Kirsch, LLP, stating that PHH will foreclose on her home despite the fact that Plaintiff made

23

each of her payments on her mortgage on time; Plaintiff had to devote countless unnecessary hours to prove and reprove PHH's evident mistake to PHH; Plaintiff has had to play a virtual game of hot potato with her mortgage payments, sending in larger payments each month to compensate for PHH's refusal to accept payments and adding fees onto her mortgage account.

132.    PHH knew or should have known that its conduct would naturally result in damage to Plaintiff, but it persisted in reckless disregard of the consequences, entitling Plaintiff to punitive damages.

133.    Plaintiff asks the Court to find PHH in breach of the covenant of good faith and fair dealing to Plaintiffs and award actual damages, consequential damages, punitive damages, attorney fees and costs incurred in this action.

   e.    **Violations of the Fair Credit Reporting Act**

134.    Plaintiff restates and realleges the preceding paragraphs of the Complaint as though set out here word for word.

135.    Under the Fair Credit Reporting Act, Defendants had an obligation to report in good faith and report information honestly.

136.    The Fair Credit Reporting Act imposes mandatory duties on furnishers of information to credit reporting agencies. These duties include but are not limited to reporting a statement on a credit report as disputed once the subject of the report disputes the debt, and conducting an accurate reinvestigation of all credit report entries formally disputed with a credit reporting agency.

137.    PHH is a "furnisher of information" within the meaning of the Fair Credit Reporting Act in that it provided information to credit reporting agencies incorrectly indicating that Plaintiff was delinquent on her mortgage payments.

24

138.    Plaintiff properly disputed PHH's notations on her credit report with the credit reporting agencies. A sample of the letter Kendra Parker sent to each credit reporting agencies, with her original attachments excluded, is attached hereto as Exhibit 24.

139.    PHH violated the mandatory provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681-2(b) by:

a.    Continuing its representations on Plaintiffs' credit file with each of the credit reporting agencies without also including a notation that this debt was disputed;

b.    Failing to fully and properly investigate the Plaintiff's dispute of the PHH representation; by failing to review all relevant information regarding same;

c.    Failing to accurately respond to the credit reporting agencies' investigations;

d.    Failing to correctly report results of an accurate investigation to every credit reporting agency; and

e.    Failing to permanently and lawfully correct its own internal records to prevent the re-reporting of its misrepresentations to the consumer credit reporting agencies.

140.    As a result of this conduct, action and inaction of PHH, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

141.    PHH's conduct, action and inaction in violation of the Fair Credit Reporting Act was willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

142.    The Plaintiff is entitled to recover costs and attorney's fees from PHH in an amount

to be determined by the Court pursuant to 15 U.S.C. § 1681o.

      **f.**    **Accounting**

      143.  Plaintiff restates and realleges the preceding paragraphs of the Complaint as though set out here word for word.

      144.  Plaintiff asks the Court to order Defendants to provide an accounting for all charges, all payments made by mortgagors, all costs and expenses "actually incurred in enforcing the terms of the obligation and mortgage or deed of trust, and the trustee's and attorney's fees other than that portion of the principal which would not then be due had no default occurred," as defined in A.C.A. § 18-50-114.

      145.  Plaintiffs also ask the Court to order Defendants to provide a full accounting and amortization schedule, to which Plaintiff would be entitled under the terms of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq, upon sending PHH a "qualified written request".

      **g.**    **Equitable Remedies.**

      146.  Plaintiff restates and realleges the preceding paragraphs of the Complaint as though set out here word for word.

      147.  Plaintiff class members seek injunctive relief enjoining Defendants from continuing to engage in any further unlawful, unfair, unconscionable and/or deceptive acts or omissions related to its mortgage servicing practices.

      148.  Plaintiff and class members seek disgorgement and restitution of all wrongfully charged late fees and attorney's fees collected, plus interest.

      149.  Because Plaintiff seeks to enforce an important right affecting the public interest,

Plaintiff request an award of attorneys' fees and costs on behalf of themselves and the class.

## VII.  DAMAGES

150.   The Plaintiff sustained damages as a direct and proximate result of the acts of Defendant as alleged herein, and seeks remedies as follows:

    a.    compensatory damages;

    b.    restitution;

    c.    interest;

    d.    costs;

    e.    reasonable attorney fees;

    f.    statutory damages as provided for under the Fair Credit Reporting Act;

    g.    punitive damages for defendants' acts which it knew or should have known would naturally and probably result in damage to Plaintiff, but which defendant continued with malice or in reckless disregard of the consequences to Plaintiff;

    h.    any consequential damages arising from defendant's breach of its contractual duties owed to Plaintiff; and

    i.    for all other just and proper relief.

WHEREFORE, Kendra Parker, acting individually and on behalf of a proposed class of all other persons similarly situated as defined herein, asks this Court to order an accounting of all charges and monetary transactions affecting the Plaintiffs' mortgage account; to declare void any putative security interest, mortgage, debt and/or note in the above described real property held by Defendant PHH, their successors and assigns; for their attorney fees and costs; and for all other just

and proper relief to which they may be entitled.

Respectfully Submitted,
Owings Law Firm
1400 Brookwood Drive
Little Rock, AR 72202
(501) 661-9999
(501) 661-8393 facsimile

By: _____
Steven A. Owings, 89035

# Exhibit 1

**Tracking Results**

Your package has been delivered.

Pag 0

| | |
|---|---|
| **Tracking Number:** | 1Z4V0R441299778295 |
| **Status:** | Delivered |
| **Delivered On:** | 03/08/2010 9:30 A.M. |
| **Signed By:** | LARA |
| **Location:** | MAIL ROOM |
| **Delivered To:** | CHICAGO, IL, US |
| **Shipped/Billed On:** | 03/08/2010 |
| **Type:** | Package |
| **Service:** | NEXT DAY AIR SAVER |
| **Weight:** | 1.00 Lb |

◆ View Shipment Information

NOTICE: UPS authorizes you to use UPS tracking systems solely to track shipments tendered by or for you to UPS for delivery and for no other purpose. Any other use of UPS tracking systems and information is strictly prohibited.



901 751 6594

Shu 500 2518

PHH
800-750-2518

SHAPIRO  KIRSCH
901-767-5566

LOAN #

■■■■S527

K

■■■)479

3/14/11                    — TNREQUESTS(2) with Cum

FAX
856-917-2848
Technology Center, For PHH

$1111.80

# Exhibit 2

METROPOLITAN BANK

| Detail | | | | Billing | List Price | Discount Price |
|--------|--|--|--|---------|-----------|----------------|
| Pickup Date | 09/11/2010 | METROPOLITAN BANK | Receiver | Weekly Service Charge | 10.00 | 10.00 |
| Service Level | | 11525 FINANCIAL CENTRE PK | | | | |
| Weight | | LITTLE ROCK | | | | |
| Zone | | AR 72211 | | | | |
| Origin/Dest | | | | | | |
| Payer | | | | Total | 10.00 | 10.00 |
| Pickup Date | 09/10/2010 | METROPOLITAN BANK | Receiver | Freight | 28.76 | 23.99 |
| Service Level | Next Day Saver | 11525 FINANCIAL CENTRE PK | | Fuel Surcharge | 2.02 | 1.66 |
| Weight | 1 lbs | LITTLE ROCK | | | | |
| Zone | 134 | AR 72211 | | | | |
| Origin/Dest | | | | | | |
| Payer | | BEAU SMALLEY | PO BOX | Total | 30.60 | 25.66 |
| Pickup Date | 09/10/2010 | METROPOLITAN BANK | Receiver | Freight | 7.33 | 6.10 |
| Service Level | Fied Ground | 11525 FINANCIAL CENTRE PK | | Extended Destination | 2.75 | 2.75 |
| Weight | 1 lbs | LITTLE ROCK | | Residential Surcharge | 2.20 | 2.20 |
| Zone | 002 | AR 72211 | | Fuel Surcharge | 0.66 | 0.61 |
| Origin/Dest | | | | | | |
| Payer | | | | Total | 12.95 | 11.66 |
| Pickup Date | 09/08/2010 | METROPOLITAN BANK | Receiver | Freight | 31.92 | 26.60 |
| Service Level | Next Day Saver | 11525 FINANCIAL CENTRE PK | | Fuel Surcharge | 2.24 | 1.87 |
| Weight | 1 lbs | LITTLE ROCK | | | | |
| Zone | 135 | AR 72211 | | | | |
| Origin/Dest | | | | | | |
| Payer | | | | Total | 34.16 | 28.47 |
| Pickup Date | 09/10/2010 | METROPOLITAN BANK | Receiver | Freight | 31.92 | 26.60 |
| Service Level | Next Day Saver | 11525 FINANCIAL CENTRE PK | | Fuel Surcharge | 2.24 | 1.87 |
| Weight | 1 lbs | LITTLE ROCK | | | | |
| Zone | 135 | AR 72211 | | | | |
| Origin/Dest | | | | | | |
| Payer | | | | Total | 34.16 | 28.47 |
| Pickup Date | 09/03/2010 | METROPOLITAN BANK | Receiver | Freight | 31.92 | 26.60 |
| Service Level | Next Day Saver | 11525 FINANCIAL CENTRE PK | | Fuel Surcharge | 2.24 | 1.87 |
| Weight | 1 lbs | LITTLE ROCK | | | | |
| Zone | 135 | AR 72211 | | | | |
| Origin/Dest | | | | | | |
| Payer | | | | Total | 34.16 | 28.47 |

UPS No: 1Z9V0R4113997/8223  Sender  Receiver

| Detail | | | | Billing | List Price | Discount Price |
|--------|--|--|--|---------|-----------|----------------|
| Pickup Date | 09/08/2010 | METROPOLITAN BANK | MORTGAGE SERVICE CENTER | Freight | 28.76 | 23.99 |
| Service Level | Next Day Saver | 11525 FINANCIAL CENTRE PK | 5505 N CUMBERLAND AVE | Fuel Surcharge | 2.02 | 1.66 |
| Weight | 1 lbs | LITTLE ROCK | CHICAGO | | | |
| Zone | 134 | AR 72211 | IL 60656 | | | |
| Origin/Dest | | | | | | |
| Payer | Sender | BEAU SMALLEY | PO BOX 0112 | Total | 30.60 | 25.66 |
| Bill Reference: PARKER | | | | | | |



LR

# Exhibit 3

PHH Mortgage

**PHH**

2001 Bishops Gate Boulevard
Mt. Laurel NJ 08054

Tel 800-785-3158
Fax 856-917-2700

August 27, 2010

*First Letter From PHH informing us they own the loan — No instructions on how to send payment - not sent until Aug. 27th —*

KENDRA N PARKER
171 CRYSTAL LAKE RD
AUSTIN, AR 72007

TRUTH IN LENDING ACT NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF
OWNERSHIP OF MORTGAGE LOAN
(15 U.S.C. § 1641(g))

You are receiving this notice because the ownership of your mortgage loan
identified below has been sold, assigned, or transferred to PHH Mortgage
Corporation ("New Creditor"). You may contact the prior holder of your
mortgage loan, or the servicer of your mortgage loan, if you want to confirm
the sale/assignment/transfer of your mortgage loan to the New Creditor.

Information about your Mortgage Loan:

Borrower Name(s):                    KENDRA N PARKER

Loan Number:                         ●●●●●5527
Address of Mortgaged Property:       171    CRYSTAL LAKE RD
                                     AUSTIN, AR 72007

Please note the following information regarding the sale/assignment/transfer
of your mortgage loan:

1. Name, address and telephone number of the New Creditor:

        PHH Mortgage Corporation
        One Mortgage Way
        Mt. Laurel, NJ 08054
        1-800-785-3158

   Please do not send your mortgage payments to this address.

2. Date of sale/assignment/transfer of your mortgage loan: August 19, 2010

3. How to reach the party who has authority to act on behalf of the New
   Creditor:

   The Servicer of your loan is the party who has authority to act on
   behalf of the New Creditor. In addition to being the New Creditor,
   we are the current Servicer of your loan responsible for collecting
   your mortgage payments, for sending you billing statements and
   escrow statements and for answering any questions you may have about
   your mortgage loan.

PHH Mortgage



2001 Bishops Gate Boulevard
Mt. Laurel NJ 08054

Tel 800-785-3158
Fax 856-917-2700

The mailing address and phone number for our mortgage service center
are:

Mortgage Service Center
PO Box 5469
Mt. Laurel, NJ 08054
1-800-785-3158

Please do not send your mortgage payments to this address.

4. The location of the place where transfer of ownership of the debt is
or may be recorded is the county recorder's office for LONOKE,
AR.

5. Additional information:
The transfer of ownership of your loan does not affect any term or
condition of your mortgage loan, other than terms directly related
to the ownership of your loan.

# Exhibit 4





SEPT — 09.14.10 — PHH WEBSITE
OCT — 10.17.10   PHH WEBSITE
NOV — 11.29.10 (??) PHH YES — ABOVE

# Exhibit 5

*MortgageQuestions*

Still have questions?
Call 800-449-8767

Your Account Information    User Profile    Contact Information

Welcome, KENDRA N PARKER

## Activity

**PHH online history —
Does not match Statements**

Loan Information

Statements   Payments   Interest/Escrow Center   Resource Center   FAQs   Homeowner's Assistance   800-449-8767

Overview   Activity   Escrow Information   Year End Information   PMI Information

Borrower:   KENDRA N PARKER
Co-Borrower:
Home Phone:
Other Phone:

**Current Balances**

Principal Balance       $143,081.77
Escrow Balance          $83.71
Suspense Balance        $0.00

**Transaction(s) Pending Application**

Unpaid Late Charges     $114.24

Recent Activity   *If your account is in process of a modification, transactional data presented in the loan activity table could be the result of updates to your account that occur during the modification posting process. Once our system updates is complete, your account will reflect the new terms indicated in your modification agreement.*

| Applied Date | Due Date | Description | Amount | |
|---|---|---|---|---|
| 01/08/2011 | | Payment of PMI/MIP | -$91.25 | |
| 12/08/2010 | 12/01/2010 | Bank Rejected Payment | $0.00 | ← PHH Bank rejecting payment for nov = |
| 12/08/2010 | 11/01/2010 | Bank Rejected Payment | $0.00 | |
| 11/03/2010 | | Payment of PMI/MIP | -$91.25 | |
| 10/08/2010 | 10/01/2010 | Payment Received | $1,111.96 | made on → |
| 11/03/2010 | 11/01/2010 | Payment Received | $177.60 | |
| 11/08/2010 | | Payment of PMI/MIP | $93.46 | |
| 10/13/2010 | 09/01/2010 | Payment Received | $1,111.96 | made on → |
| 10/08/2010 | | Payment of PMI/MIP | -$91.25 | |
| 09/08/2010 | | Payment of PMI/MIP | -$91.25 | |
| 09/08/2010 | 09/01/2010 | Payment Received | $0.00 | |
| 08/13/2010 | 08/01/2010 | Payment Received | $1,111.96 | made on → |
| 08/11/2010 | 08/01/2010 | Payment Received | $91.61 | |
| 08/08/2010 | | Payment of PMI/MIP | -$91.25 | |
| 08/23/2010 | 09/01/2010 | Escrow or Subsidy Deposit | $688.17 | |

*All information shown on this site is sent through a secure connection. Any information you exchange with this site cannot be viewed by anyone else on the Web. Account information is updated daily at 5:00 am Tuesday – Saturday. Account activity from Saturday to Monday will be available by 5:00 am Tuesday.*

① 9-09- check - missing! - not applied

You can see our history on the PHH online
account history — clearly our 9-09- check is not
applied after it was received by them on 9-09.
Our history starts w/ them Back applying our ▓▓▓▓
2nd Sept payment to AUGUST. Then they Apply
Oct payment to September.
They clearly show NOV "Received" But do not apply

300                                                          XVA 6₱:61 ILOZ/80/Z0

**Loan Activity**

PRINT | CLOSE |

| | |
|---|---|
| Description: | Payment Received |
| Transaction Amount: | $1,111.86 |
| Due Date: | 08/01/2010 ← Applied to Aug. instead of Sept. |
| Applied Date: | 09/17/2010 ~ made on |
| Escrow Balance: | $159.64 |
| Advance Balance: | $0.00 |
| The transaction was applied as follows: | |
| Principal: | $229.68 |
| Interest: | $722.56 |
| Escrow: | $159.64 |
| Misc. Fees/Late Charge: | $0.00 |
| A & H Insurance: | $0.00 |
| Life Insurance: | $0.00 |
| Miscellaneous: | $0.00 |
| Suspense: | $0.00 |

For further information, please contact our Customer Service Department at or send us email

Loan Activity

PRINT | CLOSE

Description: Payment Received

Transaction Amount: $1,111.88

Due Date: 09/01/2010 - *Applied to Sept. instead of Oct*

Applied Date: 10/13/2010 - *made on*

Escrow Balance: $159.84

Advance Balance: $0.00

The transaction was applied as follows:

Principal: $280.87

Interest: $721.05

Escrow: $159.84

Misc. Fees/Late Charge: $0.00

A & H Insurance: $0.00

Life Insurance: $0.00

Miscellaneous: $0.00

Suspense: $0.00

For further information, please contact our Customer Service Department at or send us email

**Loan Activity**

*phone payment*

*4th payment made on 4 month old loan -!*

| | |
|---|---|
| Description: | Payment Received |
| Transaction Amount: | $1,111.85 |
| Due Date: | 10/01/2010  *← applied to -* |
| Applied Date: | 11/30/2010  *← made on* |
| Escrow Balance: | $159.64 |
| Advance Balance: | $0.00 |

The transaction was applied as follows:

| | |
|---|---|
| Principal: | $231.48 |
| Interest: | $720.74 |
| Escrow: | $159.64 |
| Misc. Fees/Late Charge: | $0.00 |
| A & H Insurance: | $0.00 |
| Life Insurance: | $0.00 |
| Miscellaneous: | $0.00 |
| Suspense: | $0.00 |

For further information, please contact our Customer Service Department at or send us email

*× NOV payment made later - only because PHH gave us the run around - for 10 days or longer and would not call us back -*

*We got our Nov statement - which was grossly inaccurate - it was not showing our Oct payment - it said we were 3 months behind. We call them and are told for the 100th time "To give them a few days to research They never call back - Finally we go ahead and call in our Nov payment on the phone - while we are on phone with them for the dispute -*

# Exhibit 6

**Bank of America**                                          Online Banking

MyAccess Checking - 9250 : Transaction Details

Transaction Details:

Description: PHH MORTGAGE Bill Payment

Posting date: 09/17/2010

Amount: $1,111.87

Type: Online Transaction

Account number: MyAccess Checking-9250

Additional Details:

My Description:

# Exhibit 7

**Bank of America**   **Online Banking**

**MyAccess Checking - 9250 : Transaction Details**

**Transaction Details:**

**Description:** PHH Mortgage Bill Payment

**Posting date:** 10/15/2010

**Amount:** $1,111.86

**Type:** Online Transaction

**Account number:** MyAccess Checking-9250

**Additional Details:**

**My Description:**

# Exhibit 8

FH&H Mortgage

*November Statement*

Your monthly mortgage statement

KENDRA N PARKER
174 CRYSTAL LAKE RD
AUSTIN, AR 72007

*Oct. 15 payment not Applied yet?*

(For the period ending November 16, 2010)

### Your payment due

Past due payment(s) due ................ $3,426.72
Next monthly payment due .............. $1,111.66
Total amount late charges ................ $620.00

**Total amount due** ........................ **$3,378.58**

You are currently due for October 31, 2010

### Details of your loan

### What your monthly payment includes

### Account Activity

*We call them when Nov. statement does not reflect our Oct. 15 payment made 30 days previously. We get "Let us research a few days & will call back" - They do Not call Back!*

### Late charge message

Your monthly mortgage payment has not been received. As a result a late charge has been assessed to your account as shown above. Please remit the total due immediately.

### Summary of your payments this year

Page 1 of 1

Loan Number ............ 0327
KENDRA N PARKER

FH&H MORTGAGE
PO BOX 2112
PALATINE, IL 60094-4112

# Exhibit 9

**PHH**

2001 Bishops Gate Boulevard
Mt. Laurel NJ 08054

Tel 800-449-8767
Fax 856-917-8300

*(handwritten)* 2 letters Received in Nov- Loan only 4 months old - OR 3½ months - 3 payments had already Deen sent - See page 3 - threatening Foreclosure.

November 05, 2010

Loan Number: XXXXX8527
Property Address:
171 Crystal Lake Rd
Austin AR 72007

Kendra N Parker
171 Crystal Lake Rd
Austin AR 72007

AVISO IMPORTANTE PARA LAS PERSONAS QUE HABLAN ESPAÑOL
ESTA NOTIFICACION ES DE SUMA IMPORTANCIA, PUES AFECTA SU DERECHO A
CONTINUAR VIVIENDO EN SU CASA. SI NO COMPRENDE EL CONTENIDO DE ESTA
CARTA, OBTENGA UNA TRADUCCION INMEDIATAMENTE. SI USTED NO RESPONDE,
USTED PUEDE PERDER SU CASA EN EL FUTURO.

Dear Customer(s):

We want to help you save your home.  If the reason for your inability to pay
was due to a temporary situation, we may be able to work with you to arrange
for repayment with terms that are affordable. Please call the Mortgage
Service Center as soon as possible to pursue this option.

Your mortgage payments are past due, which puts you in default of your loan
agreement. As of the date of this letter, you owe the following:

    Payments for 2 months @ $ 1,111.86 per month*, beginning 10-01-10.
    Accumulated late charges of $.00.
    TOTAL AMOUNT DUE: $ 2,223.72.

    (*Current monthly payment. Payment may have changed during the default
     period if your account was reanalyzed for escrow.)

We have enclosed the pamphlet "How to Avoid Foreclosure" which explains ways
to assist you in bringing your loan current. If you are unable to bring your
loan current, the pamphlet also addresses alternatives to foreclosure.
Foreclosure is the legal means that we may use to take ownership of your
home if you do not make your mortgage payments. The pamphlet also provides
helpful information on home ownership counseling services available to you
as well as answering many commonly asked questions.

In addition, we have included a Financial Worksheet that is used in helping
us assess your current financial situation.  By completing and returning
this form to us, we can better assist you.

If you have any questions about the pamphlet or worksheet, please contact
us at 1-800-330-0423, Monday through Thursday 8:30am to 8:30pm and Friday
from 8:30am to 5:00pm EST. (TDD: 1-800-852-7899).

Sincerely,
Collections Department
enclosures: HUD Pamphlet/Financial Worksheet                    (XC055)

This is an attempt to collect a debt. Any information obtained will be used
for that purpose.

*Log In to MortgageQuestions.com -- your servicing website connection.*

# Exhibit 10

4001 Bishops Gate Boulevard
Mt. Laurel NJ 08054

Fax 856-917-8300

*already Faxed & Spoken
w/them countless times - and they
told us they were still looking for
our 1st check + could not find it.*

November 16, 2010

Loan Number: [ ]5527
Property Address:
171 Crystal Lake Rd
Austin AR 72007

Kendra N Parker
171 Crystal Lake Rd
Austin AR 72007

## N O T I C E   O F   I N T E N T I O N   T O   F O R E C L O S E

Dear Customer(s):

The mortgage on your property is past due for the October 01, 2010 payment.
The TOTAL AMOUNT to bring your account up to date is $ 2261.80.
To AVOID FORECLOSURE, we require a payment in "CERTIFIED FUNDS" for
the total amount due.

In addition, please be advised as of the date of this letter, $    38.00
in late charges have also accrued.

In the event you do not cure the default in full within THIRTY (30) days
from the date of this letter (as provided by the terms of the mortgage),
payment of the current principal balance will be accelerated and
foreclosure proceedings will be initiated.

Again, all remittances must be in the form of "CERTIFIED FUNDS ONLY".
Anything less than the TOTAL DUE and/or not in "CERTIFIED FUNDS",
will be refused.

Please contact us immediately at 1-800-330-0423. This is an attempt to
collect a debt, any information obtained will be used for that purpose.

Sincerely,

Loan Counseling Center

(XC007)

*Log in to MortgageQuestions.com --- your servicing website connection.*

# Exhibit 11

2001 Bishops Gate Boulevard
Mt. Laurel NJ 08054

Tel 800-449-8767
Fax 856-917-8300

November 24, 2010

Loan Number: ████5527
Property Address:
171 Crystal Lake Rd
Austin AR 72007

Kendra N Parker
171 Crystal Lake Rd
Austin, AR 72007

Dear Customer(s):

As of November 24, 2010, your loan remains past due and unpaid since the October 01, 2010 payment. By now, you should have received the Department of Housing and Urban Development (HUD) pamphlet entitled "How To Avoid Foreclosure" and returned the completed Financial Worksheet to us. If you did not receive the above-mentioned items, please contact us immediately.

Continued delinquency could result in legal action (Foreclosure) taken against you resulting in the loss of your home. Alternatives to foreclosure are available to you. However, you must take action immediately to be considered.

Please contact us at 1-800-330-0423, Monday through Thursday 8:30am to 8:30pm and Friday from 8:30am to 5:00pm EST.

Sincerely,
Collections Department                                                      (XC056)
Mortgage Service Center

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

# Exhibit 12

**Bank of America** 〰

**Online Banking**

MyAccess Checking - 9250 : Transaction Details

Transaction Details:

Description: PHH Mortgage Bill Payment

Posting date: 12/30/2010

Amount: $1,700.00

Type: Online Transaction

Account number: MyAccess Checking-9250

Additional Details:

My Description:

# Exhibit 13

**PHH Mortgage**

**PHH**

3000 Harbour Gate Boulevard
Mt. Laurel NJ 08054

Tel 800-449-8500
Fax 856-917-8500

January 19, 2011

Kendra N Parker
171 Crystal Lake Rd
Austin, AR 72007

Loan Number: _____5527
Property Address:
171 Crystal Lake Rd
Austin AR 72007

Attorney Name    : SHAPIRO & KIRSCH
Attorney Phone No.: (901)767-5566

Dear Customer:

We are returning your recent payment(s):
Check Number(s)          Amount          Date
2011903559               $1200.00        01/18/2011
                         $
                         $

Your payment(s) are being returned as it is insufficient to bring your
account current.  Your account has been referred to an attorney to handle
the foreclosure process. If you are able to bring your account current, or
need the amount necessary to bring your account current, please contact
the foreclosure attorney listed above.

If you are unable to bring your account current, there may be programs
available on behalf of your mortgage investor to provide assistance due to
unexpected hardships you may have experienced. To review any of these
programs, please call the Loss Mitigation department at 1-800-750-2518.

Sincerely,

Foreclosure Department
Mortgage Service Center

MC015 2MT

**MORTGAGE SERVICE CENTER**
PO Box 5452 • Mt. Laurel, NJ 08054-5452

MORTGAGE SERVICE CENTER
WELLS FARGO BANK
3400 NEW YORK

| CHECK NO. | MO/DAY/YR |
|---|---|
| 2011903559 | 01/18/2011 |

| AMOUNT |
|---|
| $1,200.00 |

PAY TO
THE ORDER
OF

KENDRA PARKER
171 CRYSTAL LAKE RD
AUSTIN AR 72007

600

TFA 88:90 1102/50/20

# Exhibit 14



ent back to PHH Nov and Dec payments they never applied from my Suntrust. Also Todd, Husband, sent January ayment electronically from his account for ANOTHER 1111.86 Jan 26.

# Exhibit 15

**Bank of America** 🦅

MyAccess Checking - 9250 : Transaction Details

Transaction Details:

| | |
|---|---|
| Description: | PHH Mortgage Bill Payment |
| Posting date: | 01/27/2011 |
| Amount: | $1,111.66 |
| Type: | Online Transaction |
| Account number: | MyAccess Checking-9250 |

Additional Details:

My Description:

# Exhibit 16

**Metropolitan
National Bank**

P.O. Box 8010
Little Rock, Arkansas 72203
(501) 377-7600

January 26, 2011

Kendra Parker
171 Crystal Lake Rd
Austin, AR 72007

Re:  171 Crystal Lake Rd, correspondence with PHH and notes to file

Dear Kendra,

Below please find the notes I have made on the above-referenced with respect to your payment history. This is simply a rough "cut-and-paste" from a spreadsheet I keep on files after they've closed.

note to file:  was contacted by stefanie 12.02.02 bc borrower's spouse contacted her concerned ab not being able to process his nov pmts w phh online. Concern was with pmt sent to us back in september (to be posted as aug pmt), but this pmt appears to not be reflected on acct. fwdd copy of check and ups tracking info to stefanie to show pmt sent to and received by phh. Issue again 12.10.10 w borrower inability to make dec pmt online OR via phone--they were told no more pmts would be accepted bc they are behind. stefanie fwdd me their pmt history, and again, it appears the aug pmt we fwdd to phh has not been posted to acct. i again fwdd all aug pmt info (including copy of check and ups tracking) to stefanie to fwd to borrower so they could get this resolved w phh.  heard nothing additional from stefanie. thought this issue was resolved ...--hbrw

01.19.11--file pulled for fha case binder--emailed stefanie of request from hud and advised may be due to early pmt default; requested her to get proof all pmts made from borrower--hbrw

01.21.11--recvd evidence of pmts from borrower (via stefanie)--it appears the aug pmt fwdd by us to phh has never been posted; advised stefanie to get borrowers to send auth to phh allowing me talk w them (phh) ab their loan--hbrw

01.22.11--emailed stefanie reminding her of need for auth to be sent to phh by borrowers so I can talk w them; also requested her to get evidence of dec and jan pmts made--hbrw

01.25.11--hud case binder sent via ups--hbrw

this file has MAJOR payment issue and is (probably) in early payment default. File closed 06.30.10, was purchased by phh 08.19.10 with 1st payment (due 08.01.10) due to phh (not to mnb), 1st pmt/aug issued by borrower to mnb 09.07.10. mnb upr'd said pmt to phh 09.08.10, and phh signed for it 09.09 10. BUT said pmt has not been posted to acct. sept pmt then made

by borrower online and posted to acct, oct pmt then made by borrower online and posted to acct. per borrower, borrower tried to make november pmt online, but couldn't, so made it via phone (and was charged a processing fee to do so), but this nov pmt never posted to acct. borrower then made dec pmt via check. that check cleared their acct, but they received a check back from phh (on phh check stock) returning that dec pmt.

01.25.11/830am--lmsg for and emailed todd parker to get all the facts before calling phh; note: i have been told an auth has been sent (sent 01.24.11) by borrower to phh okaying me to talk to phh ab this loan--hbrw

01.25.11/830am--tt michael in servicing and then michael in cust svc--no auth recvd yet, cannot talk to me--hbrw

01.25.11/850am--tt judy in servicing, then to tiffany stilson in t/c, then to russell springer in t/c (spvsr of t/o)--he said nov and dec pmts returned (and all future pmts will be returned) bc the august pmt is no over 90 days late. They do not do a "rolling 30." he has the ups tracking number and proof of delivery for the aug pmt we sent, and he is doing a searching the "path of the pmt" which will take 24-48 hrs (will be done by thur/fri). he will have a final answer in 1 wk. I told him my immediate concern is t/o, but long-term is effect on credit. he said if it is their fault, all credit issues will be resolved by them--hbrw

01.25.11--contact info for russ springer in phh t/c--800.449.8767 x88370 and russell.springer@mortgagefamily.com--hbrw

01.25.11/1100am--tt todd and advised him to get me any and everything he has including but not limited to evidence nov and dec pmts made and returned. Got his wife's # (kendra, she is who needs to be contacted moving fwd, she is on ly person on loan)--hbrw

01.25.11/600pm--tt kendra and advised as advised todd (get me any and everything)--hbrw

If you need anything additional, please let me know.

Thank you,

Hollie Wolfe
Metropolitan

cc: file

# Exhibit 17



**Metropolitan National Bank**

P.O. Box 6010
Little Rock, Arkansas 72203
(501) 377-7600

January 31, 2011

Todd and Kendra Parker
171 Crystal Lake Road
Austin, AR 72007

Dear Todd and Kendra

As your mortgage loan officer, I have witnessed you struggle to resolve your servicing issues with PHH to no avail; therefore, I am providing this memo in hopes to assist in establishing a timeline of the chain of events leading to this dire situation.

Since your loan closed in June 2010, there have been communication problems with the servicer (PHH). Todd initially contacted me in late July 2010/early August, concerned because a payment letter, statement, etc. had not been received directing you on when/where to make your mortgage payment. After speaking with my shipper, we determined that you should make your first payment directly to Metropolitan National Bank, and we would forward to PHH.

You brought me a check the first week of September for August's payment, which was immediately overnighted to PHH. We have provided evidence that PHH received the check in their offices; however, the check was lost and was never applied to your account.

Todd contacted me again in October. The details of the conversation are not clear, but I remember him voicing concern because he had received notice from PHH that the mortgage was delinquent. At this point, I told him that we had forwarded the first payment for August to PHH, and contacted our shipper once again to verify it had been sent. I called PHH's customer service line, briefly explained the situation, and was given a fax number to send in a copy of the check (which I did at that time). Approximately 2 days later, I called PHH once again to verify the fax had been received. I was told that no information could be released to me because I did not have authorization.

I then advised Todd to deal directly with PHH because I could not legally obtain information regarding the loan. I provided Todd with a UPS tracking document showing PHH's receipt of the first payment.

In early December, Todd contacted me because the November payment was rejected from PHH. I contacted Hollie Wolfe in operations at Metropolitan Mortgage, who

subsequently gained authorization from you to speak with PHH on your behalf. She has since been attempting to resolve the issue and assist in providing further evidence to PHH.

Should you have any other questions, please contact me at 501-940-2931.

Sincerely

Stephanie Powell Lyles
Mortgage Loan Officer

# Exhibit 18



**Experian**
A world of insight

Report Number:
3374-9634-76
Online Credit Report from Experian for:
KENDRA PARKER

Report date: January 28, 2011

Summary of Results
Details of Investigation Results
Important Message from Experian
Know your rights
View a complete copy of your corrected report

Go back

We completed any items you disputed with the sources of the information and processed any other requests you made.
The following shows the revision(s) made to your file as a result of our investigation. If you still question an item, then you may want to
contact the source of the information personally.

## Contact us                                                                                          Back to top
Need to view your report again or dispute information? Access your report online at www.experian.com/viewreport.
You may also contact us by mail at:
NCAC
P.O. Box 9701
Allen, TX 75013

Or, by phone at:
1 800 493 1058
Monday through Friday, 9 am to 5 pm in your time zone.

## Results                                                                                             Back to top
**How to read your results**
• Deleted – This item was removed from your credit report.
• Remains – This item has been verified as accurate.
• Updated – A change was made in this item; review this report to view the change. If ownership of the item was disputed, then it was
verified as belonging to you.
• Investigated – This item was either updated or deleted; review this report to learn its outcome.

### Credit Items
MORTGAGE SERVICE CENTE
Account Number:                                              Outcome: Updated

## Details Of Investigation Results                                                                    Back to top

Potentially Negative Items or Items for further review                                                 Back to top

This information is generally removed seven years from the initial missed payment that led to the delinquency. Missed payments and
most public record items may remain on the credit report for up to seven years, except Chapters 7, 11 and 12 bankruptcies and
unpaid tax liens, which may remain for up to 10 years. A paid tax lien may remain for up to seven years. Transferred accounts that
have not been past due remain up to 10 years after the date the account was transferred.

**Credit Items**

**MORTGAGE SERVICE CENTER**

| | |
|---|---|
| **Address:** | **Account Number:** |
| 2001 LEADENHALL RD | ████████ |
| MT LAUREL, NJ 08054 | **Mortgage Id:** |
| (800) 330-0423 | 100263300001178017 |

**Address Identification Number:**
0739556484

**Status:**
Open, $4,447 past due as of Jan 2011.

**Status Details:**
As of Jul 2017, this account is scheduled to go to a positive status.
This item was verified and updated on Jan 2011.

| | | | |
|---|---|---|---|
| **Date Opened:** | **Type:** | **Credit Limit/Original Amount:** | |
| 06/2010 | Mortgage | $182,541 | |
| **Reported Since:** | **Terms:** | **High Balance:** | |
| 11/2010 | 30 Years | NA | |
| **Date of Status:** | **Monthly Payment:** | **Recent Balance:** | |
| 01/2011 | $1,112 | $182,080 | |
| **Last Reported:** | **Responsibility:** | **Recent Payment:** | |
| 01/2011 | Individual | $0 | |

**Account History:**
90 days past due as of Jan 2011
60 days past due as of Dec 2010
30 days past due as of Nov 2010

**Balance History:**
12/2010 $182,080
11/2010 $182,080

1/28/2011 2:03 PM

# Exhibit 19

January 10, 2011

Kendra N Parker
171 Crystal Lake Road
Austin, AR 72007

RE: 171 Crystal Lake Road, Austin, Arkansas 72007
PHH Mortgage Corporation Loan# XXXXXX5527
S&K# 11-014267

Dear Kendra N Parker:

The law firm of Shapiro & Kirsch, LLP has been retained to initiate foreclosure proceedings to foreclose the mortgage on your property. The following information is provided to you as required by the Federal Fair Debt Collection Practices Act:

1. As of December 30, 2010 our client has advised us that the amount of the debt is $185,266.72.

2. The creditor to whom the debt is owed is PHH Mortgage Corporation.

3. The Fair Debt Collection Practices Act entitles you to dispute the debt, or any portion thereof, within thirty (30) days of your receipt of this letter. If you do not dispute the debt within that period, it will be assumed to be valid by the debt collector. The law also entitles you to request that we provide you the name of the original creditor if the original creditor is different from the current creditor, our client PHH Mortgage Corporation. If you choose to dispute the debt, or any portion thereof, or if you choose to request the name of the original creditor, you must notify us within thirty (30) days of the date you receive this letter.

4. If you notify us in writing within thirty (30) days of the date you receive this letter that you are disputing the debt or any portion thereof, or if you notify us in writing within thirty (30) days of the date you receive this letter that you want to know the name of the original creditor if that creditor is different from our client, PHH Mortgage Corporation, then we will obtain and mail to you verification of the debt and/or the name and address of the original creditor.

5. The Fair Debt Collection Practices Act does not require that we wait until thirty (30) days from the date you receive this letter before proceeding to enforce our client's legal rights Deed of Trust. In the event we do proceed to foreclose on your Deed of Trust, within thirty (30) days from the date you receive this letter, you still retain the right to dispute the debt, or any portion thereof and you also retain the right to request the name of the original creditor if the original creditor is different from the current creditor, our client PHH Mortgage Corporation.

6. If you request proof of the debt or any portion thereof or if you request the name of the original creditor within thirty (30) days from the date you receive this letter, the Fair Debt Collection Practices Act requires us to suspend our efforts to foreclose the Deed of Trust on your property, until we mail you the information validating the debt and/or until we provide you with the name of the original creditor.

Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment

may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, call (801)767-5566.

To the extent your personal liability under the Deed of Trust has been modified or extinguished by a discharge in bankruptcy, this letter should be construed merely as notification of the lender's intent to seek legal remedies against your property, including foreclosure, and not as a demand for payment from you. However, if you do not make the required payments such legal action will occur. You are encouraged to consult with your own attorney if you have any questions about your responsibilities with regard to the loan.

Any written request should be addressed to:

Shapiro & Kirsch, LLP
ATTN: Fair Debt Attorney
555 Perkins Road Extended
Second Floor
Memphis, TN 38117


PURSUANT TO THE FAIR DEBT COLLECTION PRACTICE ACT, YOU ARE ADVISED THAT THIS OFFICE IS DEEMED TO BE A DEBT COLLECTOR. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Sincerely,


Shapiro & Kirsch, LLP

# Exhibit 20

Gerald M. Shapiro
Attorney Jon Block & Florida
Jos Al. Kirsch, Managing Partner
Admitted in Tennessee
Sharon M. Fewell, Managing Attorney
Admitted in Arkansas & Tennessee
D. Denise Griffin
Admitted in Arkansas & Tennessee
Ashley M. Jones
Admitted in Arkansas & Tennessee

Bonnie B. Culp
Admitted in Tennessee
Robert Schneider
Admitted in Tennessee
Matthew W. Graves
Admitted in Arkansas Federal Courts,
Kentucky & Tennessee
Matthew P. McKay
Admitted in Tennessee & Arkansas
Jeremy Lipford, Attorney of Operations



# Shapiro and Kirsch, LLP
#### ATTORNEYS AT LAW

Date: January 3, 2011

OCCUPANT
171 Crystal Lake Road
Austin, AR 72007

Re:    FHA Case No. 203 031-4050354
       PHH Mortgage Corporation Loan No. ⬛⬛⬛⬛5527
       FHA Servicer ID No. 30275000005550640000
       Our File No. 11-014267
       Property Address: 171 Crystal Lake Road, Austin, Arkansas 72007

AVISO IMPORTANTE PARA PERSONAS DE HABLA HISPANA. ESTE ES UN AVISO MUY
IMPORTANTE. SI NO ENTIENDE EL CONTENIDO, OBTENGA UN TRADUCCION
IMMEDIATAMENTE. SI USTED NO RESPONSE DENTRO DE VIENTE (20) DIAS PUEDE
SER QUE LO HAGAN MUDAR DE LA CASA O APARTAMENTO EN DONDE VIVE.

Dear Occupant:

The mortgage for the property in which you are living is about to be foreclosed (sometimes
referred to as repossessed). We expect that ownership of the property will be transferred to
***CASE_HOLDER_PLAINTIFF_NAME*** probably within the next 60 to 90 days. Shortly
thereafter, it is probable that ownership will be transferred to the Secretary of Housing and
Urban Development (HUD).

HUD generally requires that there be no one living in properties for which it accepts ownership
unless certain conditions are met. We have enclosed a copy of those conditions as Attachment
1. These conditions should be read carefully to help you decide whether you wish to apply to
continue living in the house.

If you wish to submit a request to continue to live in this property after HUD becomes owner,
your written request must be received by HUD within 20 days of the date of this letter. Oral
requests are not permitted. We recommend that you use the enclosed Attachment 2, "Request
for Occupied Conveyance", in making your request as it gives HUD information it needs to make
its decision. If you have additional information which you wish to include with your request, you
may write it on the second page of the form or on additional pages which can be attached to the
form. Also, please fill out boxes 1, 7 and 8 of the enclosed Attachment 3, "Request for
Verification of Employment", and send it to HUD with your request. Your request must be sent
to the Chief Property Officer at the following address:

Michaelson, Conner, and Boul, Inc.
4400 Will Rogers Parkway, Suite 300
Oklahoma City, OK 73108
(877) 517-4466 or (405) 595-2000
mcm-info@mcbreo.com

If you believe that you can meet the condition for a temporary, permanent, or long-term illness or injury (See Item 1(d) in Attachment 1, "Conditions for Continued Occupancy"), you should say so in your request and include documentation supporting your claim. This documentation must include an estimate of the time you could be moved without severely aggravating the illness or injury, and a statement by a State certified physician establishing the validity of your claim.

If HUD approves your request to remain in the property, it will only be for a temporary period. See Attachment 4, "Temporary Nature of Continued Occupancy."

If HUD denies your request, you will be given an opportunity to ask that the denial be reconsidered and to furnish information relating to the reasons for the request being denied.

If HUD does not in fact become owner of this property, any decision it may make with respect to your continued occupancy will no longer apply.

If you have any questions concerning this notice, please contact the Chief Property Officer at the HUD Field Office shown previously.

IMPORTANT NOTICE

YOU MUST REPLY TO THE HUD FIELD OFFICE IN WRITING WITHIN 20 DAYS OF THE DATE ON THIS LETTER OR YOU WILL BE REQUIRED TO MOVE FROM THE PROPERTY BEFORE HUD BECOMES OWNER OF THE PROPERTY.

Sincerely,

Shapiro & Kirsch, LLP

Attachments

pc: HUD - FHA CASE NUMBER: 203 031-4050354

PHH Mortgage Corporation  Loan Number ████5527
Estimated Sale Date:  est. March 30, 2011
Estimated Clear Title Date:  February 28, 2011
Original Mortgagors or Owners:  Kendra N Parker and Todd A Parker, wife and husband
Property Address:  171 Crystal Lake Road, Austin, Arkansas 72007

(Mortgagee's Notice of Pending Acquisition)

## CONDITIONS FOR CONTINUED OCCUPANCY

The following conditions must be met before HUD can approve the occupied conveyance of an acquired property.

1. One or more of the following must be met:

    (a) Your occupancy is necessary to protect it from vandalism.

    (b) The average time in inventory for HUD's unsold inventory in the residential area in which the property is located exceeds six months.

    (c) With respect to two-to-four-unit properties, the marketability of the property would be improved by your continuing in occupancy.

    (d) An individual residing in the property suffers from a temporary, permanent, or long-term illness or injury that would be aggravated by the process of moving from the property.

2. The house must be habitable (except for approval under condition 1(d)).

3. You must have been living in the house at least 90 days prior to the date the lender acquires title to the house. (except for approval under condition 1(d)).

4. You must agree to sign a month-to-month lease at fair market rental on a form prescribed by HUD at the time HUD acquires the house.

5. You must have the financial ability to make the monthly rental payments under the terms of the lease.

6. You must agree to pay one month's advance rent when you sign the lease (except for approval under condition 1(d).

7. You must allow access to the property during normal business hours.

    (a) by HUD representatives for a physical inspection of the property, with two days notice.

    (b) by HUD contractors doing repairs, with two days notice

    (c) by real estate brokers and their clients.

8. You must disclose and verify the Social Security numbers of all family members six years of age and older.

## TEMPORARY NATURE OF CONTINUED OCCUPANCY

This is to advise you that occupancy of HUD-owned property is not permanent but is only temporary in all cases and is subject to termination to facilitate preparing the property for sale and completing its sale. Temporary means that your lease arrangement with HUD is subject to termination at the convenience of the government upon 30 day's notice. You should not view your living in the property as a permanent or long-term arrangement. It is HUD's policy to ask you to vacate the property and, if necessary, take appropriate eviction action for the following causes:

1.    Failure to execute the lease

2.    Failure to pay the required rent, including the initial payment at the time of execution of the lease.

3.    Failure to comply with the terms of the lease.

4.    Failure to allow access to the property to accomplish necessary repairs, inspect the property, or allow real estate brokers to show the property to a prospective purchaser.

5.    Preparation of the property for sale.

6.    Assignment of the property by the Field Office to a different use or program.

# Exhibit 21

Your monthly mortgage statement

*2nd November Statement they generate - Appears they correct - except late fees. Still on -*

*4th November Statement we get - Looks like they corrected issue - so we think - then see next page! Next statement is jacked back up incorrectly!*

For the period ending November 30, 2010

**Your payment due**

Property Address: 171 CRYSTAL LAKE RD AUSTIN, AR 72007

**Total amount due** $2,281.60

You are currently due for on November 01, 2010

**Account Activity**

\* *However - just when we think we are making progress with this - see next page - next statement we get is grossly inaccurate + missing 3 payments.*

**Summary of your payments this year**

**KENDRA N PARKER**

PNM MORTGAGE
P O BOX 0118
PALATINE, IL 60055-0118

Page 1 of 1

# Exhibit 22

Your monthly mortgage statement

*Statement Does not Reflect - Oct & Nov payments - Made our Dec - After we got Statement not*

KENDRA N PARKER
171 CRYSTAL LAKE RD
AUSTIN, AR 72007

For the period ending December 18, 2010

### Your payment due

| | |
|---|---|
| Previous amount due | |
| Next monthly payment due | |
| Total payment amount charges | |
| Unpaid late charges and other fees | |
| **Total amount due** | **$4,672.93** |

You are currently due for October 9th 2010

### Details of your loan

| Property address | 171 CRYSTAL LAKE RD AUSTIN, AR 72007 |
|---|---|
| Interest rate | |
| Principal balance as on Dec 18 | |
| Escrow balance on Dec 18 | $114.86 |

### What your monthly payment includes

| Principal and interest | |
|---|---|
| Escrow payment | $116.64 |
| **Total monthly payment** | **$1,111.50** |

## Account Activity

| Date | Description | Principal ($) | Interest ($) | Escrow ($) | Late charges & fees ($) | Total ($) |
|---|---|---|---|---|---|---|

## Late charge message

Your monthly mortgage payment has not been received. As a result, a late charge has been assessed to your account as shown above. Please remit the total due immediately.

### Summary of your payments this year

| Principal | |
|---|---|
| Interest | |
| Escrow | |
| Late charges | |

Page 1 of 1

PHH MORTGAGE
PO BOX 0132
PALATINE, IL 60055-0132

KENDRA N PARKER

# Exhibit 23

Your monthly mortgage statement

*Lak notice —
Statement
2 weeks later
They send this!
Oct + Nov missing
on statement
But shows*   *on PHHonline
Received!*

*Nov Statement*

KENDRA N PARKER
171 CRYSTAL LAKE RD
AUSTIN, AR 72007

Details of your loan

**For the period ending December 6, 2010**

### Your payment due

| | |
|---|---|
| Previous amount due | $3,858.59 |
| Next monthly payment due | $1,111.26 |
| Total unpaid late charges | $74.16 |
| Uncollected other charges and other fees | $17.40 |
| **Total amount due** | **$4,534.85** |

Please note that the previous payment(s) don't include prior monthly payment(s) not yet received.

You are currently due for: October 01, 2010
A late charge of $55.56 will be assessed if your payment is received after the MLA.

Property address: 171 CRYSTAL LAKE RD, AUSTIN, AR 72007

What your monthly payment looks like

| | |
|---|---|
| Principal and interest | $982.00 |
| Escrow amount | $129.26 |
| **Total monthly payment** | **$1,111.26** |

### Account Activity

| Date | Description | Principal $ | Interest $ | Escrow $ | Late charge $ | Unapplied $ | Total $ |
|---|---|---|---|---|---|---|---|

### Late charge message

Your monthly mortgage payment has not been received. As a result, a late charge has been assessed to your account as shown above. Please remit the total due immediately.

### Summary of your payments this year

| | |
|---|---|
| Principal | $449.99 |
| Interest | $7,245.41 |
| Property taxes | $0.00 |
| Late charges | $0.00 |

Page 1 of 1

PHH MORTGAGE
P O BOX 5075
PALATINE, IL 60055-5115

KENDRA N PARKER

# Exhibit 24

January 25, 2011

RE: FHA CASE 203 031-4050354

PHH Mortgage Loan Number: ▆▆▆5527

Mortgagors: Kendra Parker

Property Address: 171 Crystal Lake Rd, Austin, AR 72007


PURPOSE:   LETTER OF DISPUTE OR INACCURATE AND UNLAWFUL REPORTING ON MY CREDIT

ATTN: Credit Agency

I am submitting this letter of dispute information you have listed on my credit in regards to my loan with PHH Mortgage.  I want to stress, that I am NOT in anyway in financial distress and have made everyone of my payments.

My mortgage after closing, was sold and assigned to PHH Mortgage. I was notified by my lender and bank loan officer that PHH would have to establish our account and then we would be obligated to make our first payment in August of 2010 or as soon as the account had been set up and established. The first week of September, we were notified by our bank that they had received our account number from PHH and we could make our first payment. In addition, we had received a notice from PHH dated Aug 27th, explaining that they had assumed our mortgage.  We received this letter the first week of Sept. (Doc A). Oddly, and very confusing, the letter had 2 addresses. One for the "Mortgage Service Center" and One for PHH Corporate address.. it has under BOTH addresses the sentence "Please do not mail your payment to this address." There is NO address or instructions on how to send the payment. Confused, we contact our bank and loan officer. On our behalf, our bank rep Stephanie Powell, Metro National bank of Little Rock, printed out our loan information and sent our check by UPS overnight mail to PHH on 9-08-2010. Tracking documents and print outs we have show it was received on 9-09-2010 into the PHH mailroom payment center and signed for by one of their employees by the name Lara. The check number was 1619 in the amount of 1111.87 to cover our August payment. (Doc B)

On September 17th, we make our 2nd payment by electronic bank transfer (Doc C) and it was received by PHH on the 17th and applied. The amount was 1111.86. However, PHH applies this as the 1st payment made instead of the 2nd payment.  They show on our online statement that they applied it to Aug (not September). (Doc D)

Not until October do we receive a notice from PHH stating that our loan is past due. Not until this time did we realize there was any issue. Immediately we call them and they have no record of our first payment being received or applied that was sent and received by them on 9-09. We explain that it was sent UPS overnight, and we can provide the tracking documents.

We get our bank involved at this point, and they fax over to PHH the tracking document that clearly shows the check was received on 9-09 and signed for by one of their employees, LARA in the payment center. (Doc B) Our bank representative, Stephanie Powell, who we have written statements from, placed a call to the service center and was told by PHH that they would research, find the check, and correct any errors. At this point, we felt comfortable that the error would be corrected.  Several weeks

go by and we have not received any kind of update from PHH as to the error and if they located our check.

Oct 15th, 2010 we make our 3rd payment (Doc E) by electronic transfer for 1111.86. It is received on the PHH system; however, again, PHH back applies it as paying September, not October. (Refer to Doc D and Doc F) We receive another notice the first part of November from PHH that our loan is in default and our Statement we received late November showed we were 3 months due, when in fact, we had just made a payment on Oct 15 and Sept 17 and the loan is only 3 months old. (Doc G) This statement is obviously very inaccurate, as we can clearly show the 3 payments we sent to them. We realize at this point they have a serious problems with their system and how it correlates with payments and application.(Doc G page 3) The statements we are getting from them, don't even match what their online system shows clearly as "received" and applied. Again, we immediately contact the PHH office and have to explain we are not in default, and this is ridiculous the amount of errors and inconsistency on their part and the billing. We again explain this initially stems from a payment PHH didnot apply. At this point we also express concern because the statement we received seems to indicate our payments are not being applied correctly. We are asked to re-fax over the tracking documents and our bank statements. We are assured again that a supervisor will be researching the issue for us and will get back with us. We receive NO update regarding the error they made and have to call them back again. However, we get a 2nd November statement that now says only 1 month is due. We think FINALLY- we got one error corrected. However See all of Doc G pages 3 and 4 show the next two statements that come are showing errors again! At this point, we are furious and have been put through SO much and no one over at PHH can seem to get our account correct. We figure our first check is never going to be found inside the PHH service center. We discuss canceling it and resending. however, we are concerned that it will not be applied properly and concerned that we have a check in their office floating around and if they do find and apply, it will cause more confusion if we cancel it. At this point, PHH tells us to allow them time to look for it and they will get back to us. We have heard "They will getback to us..." for about 6 weeks at this point and continue to get incorrect statements.

In the meantime, we try to make November payment and my husband said he couldn't get it to go through on the system. They obviously have system problems and numerous complaints that I have attached from their own site. They have a "Submit a Review" page on their system; 40 reviews- and not one good review. (Doc I ) We then called PHH to check on the status of our account, because at this point, we clearly show we made Oct payment and it cleared our bank- but on the November statement we get, it does not show it applied. We called to speak with them and got the run around for over a week. Finally, my husband calls them and asks them to process our payment over the phone for November. They take our payment, we get a transaction ID number that it was approved and it even appears we may have been charged a fee for making the phone payment. ($17.50) (Doc J) We show a printout online from our PHH account that a transaction was taken over the phone and payment "received" for November. However, at some point after the transaction is made, it is never applied and by PHH. Our account history still shows "received" status for our November payment. We later learn, they had noted our account to NOT accept any more payments from us because we were in default. Really? Another call to PHH and we learn that is "their policy" that if an account is 90 days past due, they stop taking payments. We asked how is that we are 90 days past due, when you just took our October payment 30 days ago and the fact for 8 weeks we have been told that our account is being corrected and should have plenty of notes to the fact of documents we submitted and countless phone calls? We received no communication from PHH regarding their rejection of November payment. There system does not show it canceled. It says received and then says they rejected it! (Refer to Doc D) We initially thought our own bank had rejected the phone payment for some reason, however, upon calling

them- they say our account is fine, balance is fine, there are no problems to prevent any payments or with drawls from our account. We later find out that PHH refused to take the payment because it did not include enough to cover late fees and what they considered "past due" balance.

By this time I can't count how many phone calls have been made to PHH and how many times were asked to "Give them a few days to research..." We decide that we are going to keep making monthly payments, even if PHH is not applying them correctly. The last thing we want is for them to try to say we are not making our payments. We make our December payment electronically from our bank. (Doc L) We even include extra this month to cover the late fees they tacked on unjustly. On January 18th, we receive a check from PHH mortgage with a vague letter that they are returning our most recent payment, because our account is in foreclosure and its not enough to bring our account up to date. It is very vague and not signed. (Doc M) Interestingly, also, an online print out of our account does not reflect the December payment as received--but it CLEARED OUR ACCOUNT. (Doc N) PHH sent us a check for that amount with a generic note that they were not accepting payments from us. (Doc O)

On January 6, we received a letter from Shapiro and Kirsch, LLP with paperwork THREATENING FORECLOSURE!

This company cannot possibly think its ok to treat consumers like this and send their homes into foreclosure when they in fact have been sending their payments each month that continue to get mis-applied! Again, I am not in any kind of financial crisis. I have enough money in the bank to make 10 mortgage payments right now if I need to. In fact, this month, I have sent 3 payments. I resent the last 2 that I have proof were already sent and returned to me and I made January payment. I have screenshots from my online bank account (Suntrust) that I sent back Nov and Dec payments they never applied and from my husbands account he sent January's payment electronically. I am sure all 3 will be sent back to us, however, you can't make the case we are behind and not sending our payments and what is owed!

And we think at this point, it feels like a deliberate malicious attempt to take our home. PHH has over 400 BBB complaints, many claiming illegal foreclosures and they have a C rating.

I am being represented now by an attorney, Steve Owings, who said our case is "compelling and atrocious". We have invested countless hours trying to get PHH to correct their errors. My attorney can be reached at 601-661-9999, 1400 Brookwood Drive, Little Rock, AR 72202

What is really WRONG about this situation is that PHH, before reporting it on my credit, had received documentation from us showing their mistakes and was fully aware they were at fault and claimed to be working on it. In addition I have filed a complaint with the BBB bureau, The FTC, The Attorney general and I have sent our story to a consumer advocate group who today asked us if they can release our story to the press. (http://www.givemebackmycredit.com/blog/2011/01/dear-phh-mortgage-stop-screwing-up-our-credit-and-our-payments-stop-trying-to-steal-our-home-thrugh.html) I have sent out story out this week to every newspaper, tv station, radio station and media resource we can get our hands on. I have also requested a meeting with our governor in this state, Mike Beebe.

As recently as today our local bank representative Holly Wolfe made contact with the PHH Foreclosure supervisor Russell Springer. She told us in all her years of lending, this is the craziest thing she has ever had to deal with. The error is plain and simple- PHH clearly has in hand the tracking document we sent

numerous times now that shows they received a payment that was never applied. This document clearly shows that PHH received and signed for our first check on 9-09! In addition, they have as our bank clearly shown them all our payments made and received by them. What could possibly take so long to research? We by the way, have written statements as well from Holly and Stephanie from our bank that have been on the phone countless times as well with PHH over the past few months.

I believe this office has a responsibility to investigate this issue thoroughly and review all documentation and remove this negative history immediately from my credit. You will also be receiving documents from my attorney regarding the violations this company has committed in terms of the information you have on my credit.

Sincerely,

Kendra Parker
678-296-5239

IN THE CIRCUIT COURT OF LONOKE COUNTY, ARKANSAS
SECOND DIVISION

2011 MAY 13  AM 11: 14

KENDRA PARKER,                                              PLAINTIFF
individually and on behalf of all                    ~~DENISE BROWN~~
others similarly situated                             BY _____ D.C.

vs.                          Case No. CV 2011-226

PHH MORTGAGE CORPORATION; and
METROPOLITAN NATIONAL BANK                           DEFENDANTS

## AGREED ORDER OF DISMISSAL WITHOUT PREJUDICE
## AS TO DEFENDANT METROPOLITAN NATIONAL BANK

The plaintiff Kendra Parker and defendant Metropolitan National Bank

("Metropolitan") stipulate and agree that the complaint against Metropolitan in this action

shall be voluntarily dismissed under ARK. R. CIV. P. 41(a)(1). Metropolitan stipulates

that it does not currently have a legal or equitable interest in the plaintiff's real property

and mortgage that is the subject of the plaintiff's complaint.

Accordingly, the plaintiff's complaint against the defendant Metropolitan

National Bank is hereby DISMISSED without prejudice. By virtue of this Order,

Metropolitan is no longer a party to this action and has no obligation to answer the

complaint, its name shall be removed from the case caption, and the parties shall not

serve future pleadings or other papers upon Metropolitan. This Order is without

prejudice to any rights that Metropolitan may have against the defendant PHH Mortgage

Corporation.

IT IS SO ORDERED this _12th_ day of May, 2011.

ORIGINAL SIGNED BY:
PHILLIP T. WHITEAKER
CIRCUIT JUDGE, DIV. II
LONOKE COUNTY, ARKANSAS
_____
HON. PHILLIP WHITEAKER
CIRCUIT JUDGE

1



EXHIBIT
B

**STIPULATED AND AGREED:**

OWINGS LAW FIRM
1400 Brookwood Drive
Little Rock, Arkansas 72202
(501) 661-9999
(501) 661-8393 facsimile

_____
Steven A. Owings
sowings@owingslawfirm.com

*Attorney for Plaintiff Kendra Parker*

WILLIAMS & ANDERSON PLC
111 Center Street, Suite 2200
Little Rock, Arkansas 72201
Telephone: (501) 372-0800
Facsimile: (501) 372-6453

_____
Andrew King, Ark. Bar No. 2007176
aking@williamsanderson.com

*Attorney for Metropolitan National Bank*

2