IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

KENDRA PARKER,
Individually and on behalf of all
Others similarly situated                                           PLAINTIFF


VS.                        CASE NO. 4:11-CV-00439-BSM


PHH MORTGAGE CORPORATION                                    DEFENDANT

### KENDRA PARKER'S RESPONSE IN OPPOSITION TO
### PHH MORTGAGE CORPORATION'S MOTION TO DISMISS

This Court should deny Defendant's Motion to Dismiss in its entirety. Kendra Parker has sufficiently pled each cause of action. The Amended Complaint alleges actual damages for Counts A through D. Additionally, this Court has jurisdiction to grant the equitable and declaratory relief that Kendra Parker requests in Counts E through H.

## I. STATEMENT OF FACTS.

Kendra Parker alleges sufficient facts to support her claims. This section sets forth background facts to apprise the Court of the nature of PHH's actions. Additional facts are discussed in connection with specific issues in the remainder of this brief. All of the following facts are pled in the Amended Complaint in paragraphs 18 through 56.

Kendra Parker entered into a mortgage agreement with Metropolitan National Bank (Metropolitan) on June 30, 2010. Metropolitan assigned the mortgage to PHH on August 19, 2010. PHH notified Kendra Parker of its acquisition of her mortgage by letter dated August 27, 2010, but did not provide any instructions regarding how to make payments. Because of this, Kendra Parker could not determine where to send her first mortgage payment. She contacted Metropolitan, who contacted PHH and made

payment arrangements for Kendra Parker. Metropolitan instructed Kendra Parker to send her first payment to Metropolitan, who would forward the payment to PHH. Kendra Parker did as instructed.

Metropolitan accepted as timely Kendra Parker's first mortgage payment on September 7, 2010. PHH received this payment on September 9, 2010, but never credited Kendra Parker's account. Kendra Parker made all further payments through PHH's automatic bill pay system. But, due to PHH's failure to credit her first payment, it applied every payment to the previous month. As a result, PHH deemed every payment late. Kendra Parker, her husband Todd Parker, and several Metropolitan employees attempted to resolve PHH's accounting errors. PHH has taken no corrective measures.

PHH has subjected Kendra Parker to an escalating series of threats and misrepresentations. PHH has a great deal of leverage over mortgagors and uses this superior position to force mortgagors to pay unlawful fees through improper tactics, such as negative credit reporting or threats of foreclosure. PHH, due to its own accounting errors, began charging late fees to Kendra Parker's mortgage account in October 2010. In November 2010, PHH sent Kendra Parker a series of letters threatening to foreclose on her home, and it filed negative credit reports with the three credit reporting bureaus. PHH began refusing to accept Kendra Parker's mortgage payments, which caused Kendra Parker to pay her bill by telephone, subject to another fee. PHH later rejected this payment, but kept the fee and added yet another fee to Kendra Parker's account. Then, on December 30, 2010, Kendra Parker mailed PHH a $1,200.00 check—$1,111.87 for her mortgage payment, and the remainder for accrued fees. PHH accepted this check, but later refunded it, claiming Kendra Parker's mortgage

account was in default. PHH then assessed attorneys' fees to Kendra Parker's account for its wrongful attempt to foreclose on the property.

PHH has not corrected any of these issues. PHH still services Kendra Parker's mortgage and continues to include unlawful fees on her account. Additionally, PHH has not corrected its false negative credit reporting, which has led to denial of credit and a reduction in Kendra Parker's credit limit on her credit card. Kendra Parker's case is not an isolated event; rather, it results from PHH's regular business practices, which affect a vast number of mortgagors.

## II.   12(b)(6) STANDARD OF REVIEW.

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). Rule 8 of the Federal Rules of Civil Procedure requires only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to "give the defendant fair notice of what the…claim is and the grounds upon which it rests." The Plaintiff must, however, provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting Fed. R. Civ. P. 8(a)(2) and *Conley*, 355 U.S. at 47). "[N]aked assertions devoid of further factual enhancement" will not suffice. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(citing *Twombly*, 550 U.S. at 555). In considering a motion to dismiss, the Court must accept all facts as true, but should disregard any legal conclusions. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

The Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Iqbal*, 129 S. Ct. at

1950. "[The] claim must be facially plausible, meaning that the 'factual content...allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Distributing Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010)(quoting *Iqbal*, 129 S. Ct. at 1949). In making this determination, courts must view the facts in the light most favorable to the plaintiff and must accept any reasonable inference that may be drawn from plaintiff's allegations as true. *Cole*, 599 F.3d at 861.

The complaint must contain enough factual matter, taken as true, to meet the required elements of the claims asserted. This "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the defendant's wrongful conduct. *Twombly*, 550 U.S. at 556. To survive a motion to dismiss under Rule 12(b)(6), the complaint must merely allege sufficient facts "to nudge the claims across the line from conceivable to plausible." *LasikPlus Murphy, M.D., P.A. v. LCA-Vision, Inc.*, 776 F. Supp. 2d 886, 896 (E.D. Ark. 2011)(citing *Twombly*, 550 U.S. at 570). "Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Lewis & Clark Outdoors, Inc. v. L.C. Industries, Inc.*, 2008 WL 2397500, *1 (W.D. Ark. June 11, 2008)(citing *Krentz v. Robertson Fire Protection District*, 228 F.3d 897, 905 (8th Cir. 2000).

**III. THIS COURT SHOULD DENY PHH'S 12(b)(6) MOTION BECAUSE KENDRA PARKER'S AMENDED COMPLAINT PLEADS SUFFICIENT FACTS TO ESTABLISH EACH CAUSE OF ACTION AND DAMAGES.**

PHH bases its 12(b)(6) motion to dismiss on the false argument that Kendra Parker's Amended Complaint does not plead actual damages. The Amended Complaint

pleads actual damages for each claim, as well as sufficient facts to establish each claim. This Court should deny Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for the reasons set forth below.

### A. PHH violated the Real Estate Settlement Procedures Act when it treated Kendra Parker's mortgage payments as late during the 60-day period after the mortgage was transferred.

Kendra Parker's Amended Complaint states a claim under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.*, which states:

> During the 60-day period beginning on the effective date of transfer of the servicing of any federally related mortgage loan, a late fee may not be imposed on the borrower with respect to any payment on such loan and no such payment may be treated as late for any other purposes, if the payment is received by the transferor servicer (rather than the transferee servicer who should properly receive payment) before the due date applicable to such payment.

12 U.S.C. § 2605(d). This statute bars a transferee mortgage servicer from charging any late fees or treating a mortgage payment as late if the borrower makes payments on time to a prior servicer within 60 days of the effective date of the transfer. *Id.* Liability under RESPA § 2605(d) attaches to *any* act that constitutes treating a payment made during this 60-day window as late. *Id.*; *see also*, *Allen v. Bank of America Corp.*, 2011 WL 3654451 (D. Md. Aug. 18, 2011); *Hutchinson v. Delaware Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D. N.J. 2006). Damages include any harm caused by charging a late fee or otherwise treating such a payment as late. *Allen*, 2011 WL 3654451 (late fees); *Hutchinson*, 410 F. Supp. 2d 374 (negative credit reporting).

PHH's treatment of Kendra Parker's August mortgage payment as late violates RESPA § 2605(d) because she made her August mortgage payment to Metropolitan, her original mortgage servicer, according to Metropolitan's instructions. (Am. Compl. ¶¶

57–58.) Kendra Parker suffered damages arising from PHH's wrongful treatment of her August mortgage payment as late in the nature of late fees, negative credit reporting, and threatened foreclosure of her home.  (Am. Compl. ¶¶ 31, 42, 48–50, 54–55.)

> **1.** **Kendra Parker Made Her August Mortgage Payment On Time; PHH Violated RESPA When It Deemed This Payment Late.**

Kendra Parker made her August mortgage payment on time because she made the payment in accordance with Metropolitan's instructions. (Am. Compl. ¶ 58.) A borrower's payment is "on time" under RESPA if she pays it at a time that is acceptable to her servicer.  *Allen*, 2011 WL 3654451.  RESPA § 2605(d) provides that "a late fee may not be imposed…and no such payment may be treated as late for any other purposes…if the payment is received by the transferor servicer before the due date *applicable to such payment*." 12 U.S.C. § 2605(d)(emphasis added). In *Allen*, plaintiffs paid their mortgage through an automatic payment plan; this plan continued making payments to the original servicer even after the mortgage was transferred. *Allen*, 2011 WL 3654451, at *2. Due to an error in the system, the plan failed to make December payments. *Id.* The transferee servicer charged late fees and accelerated the mortgage due to the missed payment, whereas the original servicer did not deem the December payment late. *Id.* The United States District Court for the District of Maryland held that the plaintiffs stated a RESPA claim because the transferee servicer charged late fees when the payment was timely according to the transferor servicer. *Id.* at *16–17.

Kendra Parker made her mortgage payment to Metropolitan, her original servicer, and Metropolitan accepted the payment as timely. (Am. Compl. ¶¶ 21–23.) Kendra Parker received no payment instructions from PHH after transfer of her mortgage rights; thus, the only payment instructions she received were from

Metropolitan. (Am. Compl. ¶¶ 19, 21.) PHH never credited Kendra Parker's account for this payment; instead, it treated the August payment to Metropolitan as late. (Am. Compl. ¶ 24–25.) According to the plain language of RESPA § 2605(d), this Court should find that Kendra Parker's payment was timely because she made the payment "before the due date applicable to such payment," when she made the payment according to Metropolitan's instructions. *See Allen*, 2011 WL 3654451, *16–17.

### 2. Kendra Parker Suffered Actual Damages As a Result of PHH's Actions in Violation of RESPA § 2605(d).

RESPA § 2605(f) provides that "[w]hoever fails to comply with any provision of this section shall be liable to the borrower for each such failure." 12 U.S.C. § 2605(f). A party injured by a failure to comply with RESPA § 2605 may recover "any actual damages to the borrower as a result of the failure." *Id.* "[C]ourts have interpreted this requirement [of actual damages] liberally." *Yulaeva v. Greenpoint Mortgage Funding, Inc.*, 2009 WL 2880393, *15 (E.D. Cal. Sep. 3, 2009). Actual damages include both fees and negative credit reporting. *See Allen*, 2011 WL 3654451; *Hutchinson*, 410 F. Supp. 2d at 383. Kendra Parker alleges both. (*See, e.g.*, Am. Compl. ¶¶ 39, 42 (fees); Am. Compl. ¶¶ 53–54 (negative credit reporting)).

Kendra Parker suffered actual damages as a result of PHH's violation of RESPA § 2605(d) in the form of improper fees and charges. "PHH's online account system would not allow Kendra Parker to make the November mortgage payment," necessitating an unusual telephone payment. (Am. Compl. ¶ 37.) PHH charged, and Kendra Parker paid, a $17.50 "convenience" fee for this payment. (Am. Compl. ¶ 39.) Kendra Parker also paid fraudulent late fees on December 30, 2010, when she paid a $1,200.00 mortgage payment, which included $89.00 in fees. (Am. Compl. ¶ 42.) PHH

does not contend that these fees do not constitute actual damages. PHH merely asserts that Kendra Parker was never "actually and ultimately made to pay any such late fee in violation of RESPA."  (Mot. to Dismiss 6.)

PHH acknowledges that Kendra Parker alleges that she paid late fees on December 30, 2010, but points out that it returned this payment. (Mot. to Dismiss 6 n. 1.) PHH provides no explanation regarding the significance or relevance of the fact that PHH returned the funds that it wrongfully forced Kendra Parker to pay. A defendant cannot eliminate a plaintiff's cause of action under Arkansas law by simply returning funds it wrongfully took. *Schmidt v. Stearman*, 98 Ark. App. 167, 176–77, 253 S.W.3d 35, 43 (Ark. App. 2007). In Arkansas, "[t]he fact that items are eventually returned does not necessarily bar recovery of damages…but may mitigate the damages." *Id.* (citing *McQuillan v. Mercedes-Benz Credit Corp.*, 331 Ark. 242, 961 S.W.2d 729 (1998)). For example, in *City Nat. Bank of Fort Smith v. Goodwin*, 301 Ark. 182, 192, 783 S.W.2d 335, (Ark. 1990), the Arkansas Supreme Court held a bank liable for damages for conversion when it mistakenly took funds from the wrong customer's account, even though the bank quickly returned the funds and took extraordinary corrective measures. *Id.* at 340. The Court held that, because the conversion had already occurred, returning the money could not defeat the plaintiffs' claim. *Id.* The fact that PHH returned some of the fees Kendra Parker paid does not mean that Kendra Parker has no claim and suffer no damages.

Kendra Parker also suffered actual damages as a result of PHH's wrongful credit reporting. "'[D]enial of credit because of the reporting of [delinquent charges] to credit reporting agencies' can sustain a claim of actual damages under RESPA."

*Hutchinson*, 410 F. Supp. 2d at 383 (quoting *Cortez v. Keystone Bank,* 2000 WL 536666, *11–12 (E.D. Pa. May 2, 2000)). PHH quotes similar language in its Motion to Dismiss: "[a] negative credit rating is not a loss at all, unless that rating 'cause[s] damage to the plaintiff as evidenced by, for example, failing to qualify for a home mortgage.'" (Mot. to Dismiss 7)(citing *Durland v. Fieldstone Mortgage Co.*, Slip Copy, 2011 WL 805924, *3 (S.D. Cal. Mar. 1, 2011)(quoting *Anokhin v. BAC Home Loan Serv., LP*, Slip Copy, 2010 WL 3294367, *3 (E.D. Cal. Aug. 20, 2010)).

Kendra Parker has sufficiently pled actual damages from PHH's negative credit reporting. "[She] has been denied credit as a result of the false and unlawful credit reporting of PHH." (Am. Compl. ¶ 53.) "[Her] credit limit on her Mastercard was reduced from $15,000 to $5,000." (Am. Compl. ¶ 54.) These negative credit consequences are actual damages under RESPA. *See Hutchinson*, 410 F. Supp. 2d at 383.

## B. *PHH violated the Truth in Lending Act by Failing to Credit Kendra Parker's Mortgage Payment as of the Date of Receipt.*

PHH violated the Truth in Lending Act (TILA) by failing to credit Kendra Parker's August Payment as of the date of receipt. The Truth in Lending Act, 15 U.S. C. § 1631 *et seq.*, states, in pertinent part, that "[i]n connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the customer's loan account as of the date of receipt…." *Id.* at § 1639f(a). PHH is a servicer within the definition of TILA because it is "responsible for the servicing for others of residential mortgage loans," and it collects payments according to the terms of mortgage contracts. *Id.* at § 1639a(f)(2).

The TILA section at issue, 15 U.S.C. § 1639f, was amended by the Dodd-Frank Act, Pub. L. No. 111-203 § 1464, 124 Stat. 1376, 2184, in Title XIV, the Mortgage

Reform and Anti-Predatory Lending Act. The effective date of provisions enacted or amended under the Mortgage Reform and Anti-Predatory Lending Act are governed by two sections: Sections 4 and 1400(c) of the Dodd-Frank Act. TILA § 1639f became effective July 22, 2010, the day after Congress passed the Dodd-Frank Act.

Section 4 of the Dodd-Frank Act provides that "[e]xcept as otherwise specifically provided in this Act or the amendments made by this Act, this Act and such amendments shall take effect 1 day after the date of enactment of this Act." *Id.* § 4, Pub. L. No. 111-203, 124 Stat. 1376, 1390. This provision creates a catchall effective date for all provisions of the Dodd-Frank Act.  Congress enacted the Dodd-Frank Act on July 21, 2010; therefore, all parts of the Act became law July 22, 2010, absent an express effective date provision for a specific part. This effective date was well before PHH's failure to credit Kendra Parker's account for her August mortgage payment.

Section 1400(c) of the Dodd-Frank Act, titled "REGULATIONS; EFFECTIVE DATE," governs the effective date for certain portions of the Mortgage Reform and Anti-Predatory Lending Act that require enactment of regulations. As indicated by its title, this section only applies to regulations and sections for which regulations are required. The section states that "regulations…take effect not later than 12 months after…issuance of the regulations;" the provisions of the law become effective "on the date on which the final regulations…take effect;" and "[a] section of this title for which regulations have not been issued…shall take effect" eighteen months after the law is transferred for rulemaking. § 1400(c), Pub. L. No. 111-203, 124 Stat. 1376, 2136. This provision does not apply where regulations or rulemaking are not required for the implementation and effectiveness of a particular section.

10

TILA section 1639f falls under the catchall effective date in section 4 because Congress did not require regulations to implement it. Congress did not order any agency to implement rules in connection with section 1639f. *See* Dodd-Frank Act § 1464, 124 Stat. 1376, 2184 (setting forth the amendments to TILA); Curtis W. Copeland, *Rulemaking Requirements and Authorities in the Dodd-Frank Wall Street Reform and Consumer Protection Act*, Appendix A–B, CRS Report for Congress (Nov. 3, 2010)(listing every provision of the Dodd-Frank Act where Congress included rulemaking provisions without mention of TILA section 1639f). Neither TILA section 1639f itself, the Dodd-Frank Act section 1464, nor any other part of Dodd-Frank makes any reference to rulemaking with respect to TILA section 1639f.

Congress's silence on regulatory authority for TILA section 1639f is not accidental. When amending TILA section 1639e in the same portion of Dodd-Frank, Congress explicitly stated that specified agencies "shall prescribe regulations to implement this section." § 1471–72, Pub. L. No. 111-203, 124 Stat. 1376, 2185–90. The omission of such language in amended TILA section 1639f indicates that Congress intended no rulemaking for section 1639f. *See, e.g., Chesnut v. Montgomery*, 307 F.3d 698, 701–02 (8th Cir. 2002)("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.")(citing *Russello v. United States,* 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983)). Applying this canon of statutory interpretation, the TILA provision at issue took effect immediately because it does not require regulations.

Kendra Parker's Amended Complaint states a cause of action under TILA §

1639f. TILA § 1639f requires a servicer to credit a consumer's loan account as of the date of receipt of a payment. PHH received and signed for Kendra Parker's August mortgage payment on September 9, 2010, but never credited any payment to her mortgage. (Am. Compl. ¶¶ 24, 66.) Additionally, PHH took no action to correct its failure to apply Ms. Parker's first mortgage payment upon receipt. (Am. Compl. ¶¶ 66, 125.) Thus, Kendra Parker sufficiently alleges a cause of action under TILA § 1639f.

The effective date of TILA § 1639f is an issue of first impression. In the event that that the Court does decide that TILA section 1639f is not yet effective law, the Court should allow Kendra Parker an opportunity to amend her Complaint and allege that PHH violated numerous common law and contractual duties by its failure to credit Kendra Parker's mortgage payment as of the date of receipt.

## C. *PHH Violated the Arkansas Deceptive Trade Practices Act When it Represented that it had the Right to Foreclose on Kendra Parker's Home.*

Kendra Parker's Amended Complaint pleads a cause of action under the Arkansas Deceptive Trade Practices Act (ADTPA). The ADTPA prohibits "unconscionable, false, or deceptive acts or practices in business, commerce, or trade." Ark. Code Ann. § 4-88-107(a)(10). To state a cause of action under the ADTPA, a consumer need only show any "unconscionable, false, or deceptive act or practice in business, commerce, or trade," Ark. Code Ann. § 4-88-107(a)(10), and "actual damage or injury as a result of" such an act. Ark. Code Ann. 4-88-113(f). PHH violated the ADTPA because it (1) deceptively represented that it had a right to foreclose on Kendra Parker's property when it did not; (2) sent letters threatening to take Kendra Parker's home from her if she did not pay late fees and all other amounts it demanded; and (3) caused Kendra Parker damages because she incurred and paid fees she did not owe

12

and that she would not have paid if PHH had not represented that it had a right to foreclose on her home and that it intended to exercise that right.

PHH relies only on the bald assertion that Kendra Parker "does not allege that she actually paid any unlawful fee or otherwise suffered any actual, compensable damages by virtue of PHH's purported threat of foreclosure." (Mot. to Dismiss 9.)[1] Again, this assertion ignores the plain allegations on the face of Kendra Parker's Amended Complaint. The Amended Complaint alleges, at a minimum, that Kendra Parker paid a $17.50 "convenience" fee with her November mortgage payment and $89 in fees on her December mortgage payment. (Am. Compl. ¶¶ 40, 42.) These fees constitute actual damages because Kendra Parker paid these fees in response to PHH's deceptive representations that it could and would foreclose on her property.

The cases PHH cites to support its conclusion are inapposite because they involved cases where the plaintiff neglected to show actual damages. *Clough v. Countrywide Home Loans, Inc.*, 2008 WL 5263385 *3–4, 7 (E.D. Ark. Dec. 17, 2008)(Plaintiffs pled only emotional distress and diminution of credit as damages); *Whatley v. Recontrust Co. NA*, 2010 WL 4916372, *17–18 (E.D. Ark. Nov. 23, 2010)(Plaintiff did not allege that defendant's misrepresentations caused her to suffer any actual damages or explain the nature of those damages).

**D.   *PHH Committed the Tort of Conversion When it Charged Kendra Parker Unlawful Fees and Accepted Payment of Such Fees with the Intent to Permanently Deprive Kendra Parker of Her Property.***

PHH committed the tort of conversion because Kendra Parker made each of her

---

[1] PHH incorrectly asserts that "reliance…on alleged violations of RESPA or TILA to establish an ADTPA claim fails because plaintiff has failed to state a viable claim under RESPA or TILA." (Mot. to Dismiss 9 n. 4.) PHH's deceptive representations that Kendra Parker owed late fees were illegal under RESPA and TILA. However, the outcome of these claims has no effect on the ADTPA claim and PHH has cited no authority to the contrary.

mortgage payments on time, PHH charged unlawful fees to her account, and PHH accepted payment of these unlawful fees with the intent to permanently deprive Kendra Parker of the use of her property. (Am. Compl. ¶¶ 42–43, 143, 148–49.) Kendra Parker's alleges two alternative theories of liability: (1) a general conversion theory— PHH "unlawfully exercised dominion over the personal property owned by Kendra Parker and class members" (Am. Compl. ¶ 148); and (2) a specific conversion theory— "PHH took funds paid by Kendra Parker and members of the proposed class as payment for unlawful fees, which it had no legal right to assess as alleged [in Kendra Parker's claims for violations of RESPA and TILA.]" (Am. Compl. ¶ 149). PHH's Motion to Dismiss inappropriately fixates on only the second theory of conversion and asserts that "because plaintiff's RESPA and TILA claims fail…plaintiff has no basis for a conversion claim based on that alleged conduct." (Mot. to Dismiss 11.) Kendra Parker's conversion claim is a separate cause of action, independent of her federal claims. *See McQuillan v. Mercedes-Benz Credit Corp.*, 331 Ark. 242, 247, 961 S.W.2d 729, 732 (Ark. 1998)(discussing state law conversion claim). Thus, Kendra Parker has a valid conversion claim notwithstanding the success of her other claims.

The tort of conversion is "a common-law tort action for the wrongful possession or disposition of another's property." *McQuillan*, 331 Ark. at 247, 961 S.W.2d at 732. A defendant is liable for conversion when it "wrongfully commits a distinct act of dominion over the property of another which is inconsistent with the owner's rights." *Buck v. Gillham*, 80 Ark. App. 375, 379, 96 S.W.3d 750, 753 (Ark. App. 2003). The wrongful possession is conversion; therefore, a conversion occurs the moment a party asserts improper dominion over someone else's property. *Id.* PHH committed the tort of

conversion the moment it accepted Kendra Parker's December Payment, which included the unlawful fees. (*See* Am. Compl. ¶¶ 42–43.)

PHH incorrectly alleges that Kendra Parker suffered no actual damages because PHH returned her December Payment. (Mot. to Dismiss 11.) A defendant cannot escape liability for conversion by simply returning the property. *Schmidt v. Stearman*, 98 Ark. App. 167, 176, 253 S.W.3d 35, 43 (Ark. App. 2007). Arkansas courts only allow evidence that the defendant has returned converted property if certain circumstances are present; most importantly, the conversion must have occurred by mistake. *Id.* The return of converted property is "evidence to be considered in mitigation of damages," but it does not "negate the conversion." *Id.* at 176–77 (citing *City Nat. Bank of Fort Smith v. Goodwin*, 301 Ark. 182, 192, 783 S.W.2d 335, 340 (Ark. 1990)). "The return of property [cannot] support [an] outright finding in favor of [the defendant], which amounts to a finding that no conversion took place." *Schmidt*, 98 Ark. App. at 177, 253 S.W.3d at 43. The *Schmidt* Court noted that the return of property could reduce the damages award, but could not defeat the plaintiff's conversion claim itself. *Id.* According to Arkansas law, the fact that PHH returned Kendra Parker's December Payment cannot defeat her conversion claim. *See id.* This Court should not consider PHH's return payment at all because PHH's acts were purposeful, not by mistake. *See id.* at 176.

PHH incorrectly asserts that Kendra Parker's conversion claim is dependent upon the success of her RESPA and TILA claims. (Mot. to Dismiss 11.) Kendra Parker does not allege that the conversion claim rests upon violation of either RESPA or TILA. (Am. Compl. ¶¶ 147–50.) Conversion is an independent state law claim for the wrongful possession of another's property. *See McQuillan*, 331 Ark. at 247, 961 S.W.2d at 732.

15

PHH's violations of RESPA and TILA are irrelevant to the conversion claim.[2]

PHH committed a conversion the moment it wrongfully deprived Kendra Parker of the use of her property, which was when it accepted payment of unlawful fees. The fact that PHH returned Kendra Parker's December Payment cannot defeat the conversion claim according to Arkansas law. *See Schmidt*, 98 Ark. App. at 176–77, 253 S.W.3d at 43. PHH did not mistakenly convert Kendra Parker's property. (Am. Compl. ¶25, 28–30.) Therefore, evidence that PHH returned the funds in January 2011 should be disallowed entirely. *See id* at 176. This Court should allow Kendra Parker to proceed with her conversion claim because she has stated a valid claim for relief under an Arkansas state law conversion theory.

### E. *Kendra Parker is Entitled to an Accounting of her Mortgage.*

Kendra Parker is entitled to an accounting of her mortgage. A court may order an equitable accounting when "the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them." *Vanoven v. Chesapeake Energy Corp.*, Slip Copy, 2011 WL 1042251, *18 (E.D. Ark. March 22, 2011). Kendra Parker entered into a mortgage agreement with Metropolitan, and Metropolitan assigned it to PHH. (Am. Compl. ¶ 20.) PHH never applied Kendra Parker's August mortgage payment. (Am. Compl. ¶ 25.) PHH charged, and Kendra Parker paid, numerous fees to Kendra Parker's mortgage account. (Am. Compl. ¶¶ 31, 34, 39, 41–42.) PHH returned at least one of her mortgage payments. (Am. Compl. ¶ 43.) The facts surrounding Kendra Parker's mortgage are such that she cannot decipher

---

[2] PHH did violate RESPA and TILA when it determined that payments were late and assessed various fees and charges on Kendra Parker's account. *See* 12 U.S.C. § 2605(d), 15 U.S.C. § 1639f. (*See* Am. Comp. ¶¶ 31, 42, 63, 66.) This only bolsters Kendra Parker's claim for conversion because it provides further evidence of a wrongful act. Kendra Parker's conversion claim does not, however, depend upon PHH's liability under either RESPA or TILA.

PHH's actions without this Court's assistance.

PHH's current accounting documents for Kendra Parker's mortgage do not reflect all fees charged to her mortgage or all payments she made that PHH later returned. In discovery, PHH disclosed only Kendra Parker's loan file, which did not contain any reference to the December 30, 2010 mortgage payment. Kendra Parker has documentary proof of the December payment and surrounding circumstances. Because of this obvious discrepancy in the PHH loan file, she cannot possibly obtain an accurate accounting reflecting all fees charged to her account and all payments she made to PHH through normal discovery processes. Therefore, Kendra Parker is entitled to an equitable accounting. *See Peace v. MERS*, Slip Copy, 2010 WL 2384263, *3 (E.D. Ark. June 3, 2010)("An accounting is…usually available only when legal remedies are inadequate, and usually only when the information sought could not be obtained in discovery.") Alternatively, Kendra Parker requests that the Court hold ruling on this issue in abeyance pending completion of discovery, at which time it will be clear the extent to which PHH's current records disclose fees and payments that were reversed or returned, and whether it will be necessary for this Court to intervene.

### F.  *Kendra Parker is Entitled to Equitable Remedies.*

Kendra Parker is entitled to the injunctive relief and equitable remedies requested in Counts F and G of her Amended Complaint. Specifically, Kendra Parker requests an injunction barring PHH from engaging in any "further unlawful, unfair, unconscionable and/or deceptive acts or omissions related to its mortgage servicing practices;" disgorgement and restitution of all fees paid in response to PHH's deceptive letters; an injunction prohibiting PHH from continuing to violate RESPA; disgorgement

and restitution of all fees PHH charged in violation of RESPA; and attorneys' fees and costs. PHH does not challenge this Court's authority to grant the requested injunctive and equitable relief but states merely that "PHH is entitled to Rule 12(b)(6) dismissals of Counts A through C of the amended complaint, [therefore] plaintiff has failed to state a viable claim for any equitable remedies concerning RESPA, TILA, and ADTPA." (Mot. to Dismiss 13–14.) As stated above, PHH is not entitled to dismissal of Counts A or C of Kendra Parker's Amended Complaint. Therefore, this Court may grant the requested equitable relief barring PHH from further violating RESPA and the ADTPA.

## IV. THIS COURT HAS JURISDICTION TO ENTER A DECLARATORY JUDGMENT THAT PHH CANNOT FORECLOSE ON ARKANSAS PROPERTY UNLESS IT HAS RECORDED ITS INTEREST IN THE PROPERTY.

This Court has jurisdiction to enter a declaration that PHH does not have the right to foreclose on property where it, or its principal, has not recorded its interest in the property. Arkansas law, not federal standing law, governs this claim. This Court has ruled that, under Arkansas law, federal courts have jurisdiction to declare a mortgagee's rights under a mortgage. *Harris v. CitiMortgage, Inc.*, 2006 WL 2711525, *16 (E.D. Ark. Sept. 21, 2006). The Arkansas Declaratory Judgment Act, Ark. Code Ann. § 16-111-101, *et seq.*, states that "[a]ny person interested under a deed, will, written contract, or other writings constituting a contract…may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." *Id.* at § 16-111-104. As a party to a mortgage deed of trust, Kendra Parker has the right to have this Court declare the rights of all purported parties to that deed of trust. This is all Kendra Parker asks of this Court. Such a declaration will benefit not only Kendra

Parker, but also the thousands of class members with identical mortgages serviced by
PHH who are in the same situation.

This Court has jurisdiction over all of Kendra Parker's claims pursuant to federal
law. The Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), gives this Court jurisdiction
because Kendra Parker brings her request for a declaration of rights on behalf of an
Arkansas class pursuant to Arkansas law. (Am. Compl. ¶ 165.) Additionally, this Court
has federal question jurisdiction over Kendra Parker's RESPA and TILA claims pursuant
to 28 U.S.C. § 1331. Because this Court has jurisdiction over Kendra Parker's federal
claims, this Court may also exercise pendant jurisdiction over Kendra Parker's state law
claims because such claims are "so related to claims in the action within such original
jurisdiction that they form part of the same case or controversy under Article III of the
United States Constitution." 28 U.S.C. § 1367. Thus, this Court may enter the requested
declaratory relief stemming from PHH's violations of RESPA, TILA, and state law.

Kendra Parker has standing to request declaratory relief pursuant to United
States Supreme Court standing jurisprudence. To establish standing "a plaintiff must
show (1)…'injury in fact' that is (a) concrete and particularized and (b) actual or
imminent…; (2) the injury is fairly traceable to the challenged action of the defendant;
and (3) it is likely…that the injury will be redressed by a favorable decision." *Friends of
the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000)(citing *Lujan v.
Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). PHH and third parties for whom
PHH services mortgages regularly refuse to record their interests in real property in
Arkansas. (Am. Compl. ¶¶ 74, 81.) This failure to record renders any threat of
foreclosure false because no party may foreclose in Arkansas without a recorded

interest in the property. (Am. Compl. ¶¶ 75, 82–88.)

PHH engages in a regular pattern and practice of sending letters threatening foreclosure to borrowers in Arkansas, including Kendra Parker, when it has no legal right to foreclose on such property. (Am. Compl. ¶¶ 33–35, 49, 75–76.) Whether PHH actually foreclosed on Kendra Parker's property or instituted a formal foreclosure proceeding is irrelevant. PHH continues servicing Kendra Parker's mortgage and it has yet to record any interest in her property; therefore, it could resume sending deceptive letters threatening foreclosure at any time. Kendra Parker's injuries are capable of replication at any time in the future because of the continuing nature of the parties' relationship. Thus, Kendra Parker has standing to request a declaratory judgment.

## V. CONCLUSION

For the foregoing reasons, Kendra Parker asks this Court to deny Defendant's Motion to Dismiss on all grounds.

Respectfully Submitted,

**Attorneys for Plaintiffs**

By:/s/ Steven A. Owings

Steven A. Owings, 89035
Alexander P. Owings, 2011-036
OWINGS LAW FIRM
1400 Brookwood Drive
Little Rock, AR 72202
(501) 661-9999
(501) 661-8393 facsimile
sowings@owingslawfirm.com
apowings@owingslawfirm.com

Jack Wagoner, (AR Bar No. 89096)
WAGONER LAW FIRM, P.A.
1320 Brookwood, Suite E
Little Rock, AR 72202

(501) 663-5225
(501) 660-4030 (facsimile)
jack@wagonerlawfirm.com

Brent Walker (AR Bar No. 2002152)
CARTER WALKER PLLC
2171 West Main, Suite 200
P.O. Box 628
Cabot, AR 72023
(501) 605-1346
(501) 605-1348 (facsimile)
bwalker@carterwalkerlaw.com


## CERTIFICATE OF SERVICE

I, Steven A. Owings, hereby certify that I have this day electronically filed the foregoing Response in Opposition to PHH Mortgage Corporation's Motion to Dismiss with the Clerk of the Court using the CM/ECF system which automatically sent email notification of such filing to the following attorneys of record, each of whom is a registered participant in the Court's electronic notice and filing system:

Geoffrey B. Treece
gtreece@qgtb.com

Joseph R. Falasco
jfalasco@qgtb.com

Brandon B. Cate
bcate@qgtb.com
*Attorneys for Defendant*

This 11th day of November, 2011.

By: s/ Steven A. Owings
Steven A. Owings (AR Bar No. 89035)
OWINGS LAW FIRM
1400 Brookwood Drive
Little Rock, AR 72202
(501) 661-9999
(501) 661-8393 (facsimile)
sowings@owingslawfirm.com