**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**LITTLE ROCK DIVISION**

KENDRA PARKER, Individually and on                                    PLAINTIFF
behalf of all others similarly situated

v.                              CASE NO. 4:11CV00439 BSM

PHH MORTGAGE CORPORATION                                              DEFENDANT

<u>ORDER</u>

Plaintiff Kendra Parker filed suit on April 1, 2011, in the Lonoke County Circuit Court [Doc. No. 2] and defendant PHH Mortgage Corporation ("PHH") removed the action on May 25, 2011 [Doc. No. 1]. Parker amended her complaint on October 18, 2011 [Doc. No. 19], and PHH now moves to dismiss Parker's claims [Doc. No. 21] as legally insufficient.

For the reasons set forth below, PHH's motion to dismiss is granted in part and denied in part.

I. ALLEGATIONS

Viewing the facts in the light most favorable to Parker, the non-moving party, the facts are as follows. Parker owns property in Lonoke County, Arkansas that secures a mortgage. Am. Compl. ¶ 8. The mortgage, which was taken out with Metropolitan National Bank on June 30, 2010, was sold to PHH on August 19, 2010. Parker was notified on August 27, 2010, that PHH purchased her mortgage. *Id.* ¶¶ 18, 20-21.

Parker was unable to determine the proper address to send her first mortgage payment, so she arranged to send the payment to Metropolitan who would forward the payment to

PHH. *Id.* ¶¶ 22-24.  In accordance with this arrangement, she sent a check to Metropolitan on September 7, 2010.  *Id.* ¶ 58, Exhibit 2.  Though the payment was received by PHH on September 9, 2010, it was never applied to Parker's mortgage.  *Id.* ¶¶ 24-25.  Parker later set up an automatic payment service to make her mortgage payments and made her payments this way in September and October of 2010.  *Id.* ¶¶ 26-29.  PHH, however, applied the September payment to the amount due for August and the October payment to the amount due for September.  *Id.* ¶¶ 28-30.  PHH then began to impose late fees on Parker's account in October.  *Id.* ¶ 31.

Parker's November 2010 statement showed accounting errors including information that she missed payments in August and October of that year, though the online account information showed those payments had been received and credited.  *Id.* ¶ 32.  Parker then received several letters from PHH in November 2010 stating that mortgage payments were past due and threatening to foreclose on her property.  *Id.* ¶ 33.  That same month, PHH began to refuse to accept Parker's mortgage payment by the automatic payment system.  *Id.* ¶ 36.  Additionally, Parker's husband attempted to make a mortgage payment over the phone, was charged a "convenience" fee for that payment, and that payment was later rejected and not applied to Parker's account.  *Id.* ¶¶ 39-40.  On December 30, 2010, Parker sent a check to PHH as her December payment of her mortgage and included payment of the fraudulent late fees.  *Id.* ¶ 42.  PHH cashed this check but later mailed a refund check to Parker claiming that she was in default on the mortgage.  *Id.* ¶ 43.

PHH later filed negative reports with all three credit reporting bureaus stating that

Parker had a past due balance as of August 2010. *Id.* ¶ 48.  Additionally, PHH assigned

Parker's mortgage to its mortgage foreclosure division and retained foreclosure counsel, thus

accruing attorney's fees for the wrongful foreclosure. *Id.* ¶¶ 49-50.  Parker alleges that it is

PHH's business practice to force mortgagors to pay improper fees through threats of negative

credit reporting and threats of foreclosure, and that both of these tactics were used on her.

*Id.* ¶¶ 2, 3.  Parker also alleges that PHH did not record its interest in her mortgage in the

county where the property is located, as required by statute, and therefore PHH has no right

or standing to foreclose on her property. *Id.* ¶ 4.  Furthermore, Parker alleges that this is a

standard business practice of PHH. *Id.*

Parker asserts violations of the (1) Real Estate Settlement Procedures Act (RESPA),

(2) Truth in Lending Act (TILA), and (3) Arkansas Deceptive Trade Practices Act

(ADTPA), and state law claims for (4) conversion, (5) equitable relief in the form of an

accounting, (6) injunctive relief in the form of enjoining PHH from engaging further in this

alleged unlawful conduct, and (7) declaratory relief that PHH has no right to foreclose on

any property where it has not complied with Arkansas' recording requirements.

## II. LEGAL STANDARD

"Dismissal is proper where the plaintiff's complaint fails to state a claim upon which

relief can be granted." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir.

2008) (citing Fed. R. Civ. P. 12(b)(6)). Accepting as true all of the factual allegations

contained in the complaint, the complaint must be reviewed to determine whether its

allegations show that the pleader is entitled to relief. *Id.*  Although the plaintiff "need not

prove specific facts in support of allegations," she must include "sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Id.* (internal citations omitted).  Furthermore, consideration of exhibits attached to the pleadings can properly be considered in addressing a motion to dismiss.  *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011).

## III. DISCUSSION

PHH's motion to dismiss is granted in part and denied in part.  The motion to dismiss is granted on Parker's RESPA, TILA, accounting, equitable remedies as to RESPA and TILA, and declaratory relief claims and denied on her ADTPA, conversion, and equitable remedies as to all other claims.

A.     Real Estate Settlement Procedures Act

PHH's motion to dismiss Parker's RESPA claim is granted.  RESPA was enacted to provide consumer protection and transparency in the mortgage settlement process.  12 U.S.C. § 2601.  Lenders are required to inform borrowers, at the time of application for the loan, whether the servicing of that loan may be "assigned, sold, or transferred to any other person at any time while the loan is outstanding."  12 U.S.C. § 2605(a).  Additionally, a transferee mortgage servicer is barred from charging a borrower late fees within sixty days of the effective date of the transfer "if the payment is received by the transferor servicer (rather than the transferee servicer who should properly receive payment) before the due date applicable to such payment."  12 U.S.C. § 2605(d).  RESPA provides for a private right of

action against those who fail to comply with its provisions.  12 U.S.C. § 2605(f).  Borrowers

can recover "any actual damages" caused by a failure to comply.  12 U.S.C. § 2605(f)(1)(A).

Parker alleges that PHH violated Section 2605(d) by imposing a late fee on her

August 2010 payment in October 2010, within sixty days of the effective date of the transfer

of the mortgage.  Am. Compl. ¶ 31.  That payment was paid to Metropolitan, the transferor,

rather than PHH, the transferee.  Section 2605(d) would seem to provide Parker with a cause

of action as she paid the transferor servicer, rather than the transferee servicer, and the late

fee was charged within sixty days of transfer.  The facts alleged in the complaint, however,

do not support a cause of action as the payment must be received by the transferor servicer

"before the due date applicable to such payment," 12 U.S.C. § 2605(d), and Parker made her

August 2010 payment on September 7, 2010, Am. Compl. ¶ 58.  Therefore, Parker has no

claim for violation of Section 2605(d) as she did not make the payment to either

Metropolitan or PHH before the applicable due date.

Parker cites *Allen v. Bank of America Corporation*, 2011 WL 3654451 (D. Md. 2011),

to support the proposition that a borrower's payment is "on time" under RESPA if she pays

it at a time that is acceptable to her servicer.  Pl.'s Resp. at 6.  In *Allen*, the plaintiffs paid

their mortgage through an automatic payment plan that errantly sent those payments to the

transferor servicer rather than properly sending them to the transferee servicer and,

subsequently, the transferee servicer charged late fees and accelerated the mortgage.  2011

WL 3654451 at *2.  The district court held that the plaintiffs had adequately plead a RESPA

claim as the late fees occurred in the sixty-day window.  *Id.* at *5.

Parker's reliance on *Allen* is misplaced because the plaintiffs in *Allen* made their payment on time and Parker did not.  Indeed, Parker's August payment was due on August 1 and she did not make the payment until September 7.  Am. Compl. at Ex. 2.  Further, the record is devoid of anything indicating that her payment was made late because she did not know where to send the payment, because she alleges that she did not receive notice that PHH purchased her mortgage until August 27, which was almost four weeks after her payment was due.

Accordingly, PHH's motion to dismiss Parker's RESPA claim is granted.

B.      Truth in Lending Act

The motion to dismiss Parker's TILA claim is granted.  TILA provides that no mortgage servicer "shall fail to credit a payment to a customer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency[.]" 15 U.S.C. § 1639f(a).  PHH is a "servicer" as it is a "person responsible for the servicing for others of residential mortgage loans[.]" 15 U.S.C. § 1639a(f)(2).

Parker alleges that PHH violated TILA when it received her first mortgage payment on September 9, 2010, and did not credit the payment on that date.  Am. Compl. ¶ 123. Parker alleges actual damages stemming from this act including late fees incurred on misapplied payments, negative credit reporting on timely mortgage payments, threats of

foreclosure, and attempts to collect nonexistent debts.  *Id.* ¶ 129.

PHH moves to dismiss arguing that the applicable section of TILA was not in effect in September 2010 when Parker made this payment.  Section 1639f was enacted as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act and was signed into law on July 21, 2010.  Pub. L. No. 111-203.  Section 4 of the Dodd-Frank Act provides that "[e]xcept as otherwise specifically provided in this Act or the amendments made by this Act, this Act and such amendments shall take effect 1 day after the enactment of this Act."  *Id.* at § 4, 124 Stat. 1376, 1390.  Thus, the Dodd-Frank Act became effective on July 22, 2010 except for those sections that were "otherwise specifically provided."

Section 1639f, enacted as Section 1464 of the Dodd-Frank Act, is one of those sections that did not become effective on July 22, 2010.  Indeed, it is one of the sections that will go into effect either when regulations implementing that section go into effect or eighteen months after July 21, 2011.  Sections found in Title XIV that are accompanied by regulations go into effect when the regulations take effect.  *Id.* at § 1400(c)(2), 124 Stat. 1376, 2136.  Sections in Title XIV that are not accompanied by regulations go into effect eighteen months after the "designated transfer date."  *Id.* at § 1400(c)(3), 124 Stat. 1376, 2136.  The designated transfer date is the date when there is a transfer of certain functions to the Bureau of Consumer Financial Protection, July 21, 2011.  *See id.* at § 1062, 124 Stat. 1376, 2039-40; 75 Fed. Reg. 57252-02.

Parker argues that Section 1639f was effective the day after the Dodd-Frank Act was

signed into law as Section 1400(c) only applies to sections that require regulations to be implemented.  Pl.'s Resp. At 10.  She also argues that Congress prescribed that regulations should be issued on 1639e and canons of statutory construction dictate that where Congress includes language in one section of a statute but omits it in another, it is generally presumed that it acted intentionally in the inclusion and exclusion.  *See Russello v. United States*, 464 U.S. 16, 23 (1983).

A plain reading of section 1400(c) does not support Parker's interpretation.  First, the title clearly indicates that the section addresses both the regulations required to be implemented and the effective dates for all of the sections of Title XIV.  *See Williams v. Well Fargo Bank N.A.*, 2011 WL 4368980, at *6 (S.D. Fla. 2011).  Furthermore, section 1400(c) clearly provides that subsection (c)(2) addresses the effective date of those sections with regulations and subsection (c)(3) addresses those without regulations, which would include those that require no regulations.  *See id.*

Finally, Parker argues that a pre-existing federal regulation is identical to 15 U.S.C. § 1639f.  *See* Pl.'s Notice of Supplemental Authority.  This regulation, promulgated by the Board of Governors of the Federal Reserve in 2008, is identical to Section 1639f.  *See* 12 C.F.R. § 226.36(c).  Parker cites *Burkett v. Bank of America* in support of her position that she has stated a TILA claim and that 12 C.F.R. § 226.36(c) provides an avenue for a claim.  *See* 2011 WL 4565881 (S.D. Miss. 2011).

Parker's reliance on *Burkett*, is misplaced because that case does not address whether

8

Regulation Z (the TILA regulations) provides a right of action.  *See id.* at 4.  Furthermore, courts that have considered whether Regulation Z confers a private cause of action have found that it does not.  *See Smith v. Jenkins*, 626 F. Supp.2d 155, 168 (D. Mass. 2009); *Brett v. Woodley*, 2007 WL 1695652, 3, n. 1 (D. Del. 2007).  Regulation Z is not a statutory provision, but an administrative regulation promulgated by the Federal Reserve Board to facilitate the enforcement of TILA and does not confer a private right of action.  The absence of a private right of action in 12 C.F.R. § 226.36(c) is illustrated by the fact that Congress has now provided a private cause of action with Section 1639f which, as set forth above, has not yet gone into effect.

As 15 U.S.C. 1639f was not in effect at the time Parker made this payment, she has no cause of action under TILA and has failed to state a claim upon which relief can be granted.  Accordingly, PHH's motion to dismiss Parkers TILA claim is granted.

Parker, however, has requested leave to amend her complaint to allege state common law and contractual duties breached by PHH in failing to credit her mortgage payment as of the date of receipt.  That request is granted and Parker is directed to file an amended complaint within twenty days of entry of this order.

C.     Arkansas Deceptive Trade Practices Act

The ADTPA prohibits "unconscionable, false, or deceptive acts or practices in business, commerce, or trade."  Ark. Code Ann. § 4-88-107(a)(10).  To state a cause of action, Parker must allege such an act or practice and that she has "suffer[ed] actual damage

or injury as a result of" that act.  Ark. Code Ann. § 4-88-113(f).

PHH moves to dismiss this county arguing that Parker has not stated a claim under ADTPA as she has not alleged actual damages.  PHH argues that if the fees were not unlawful under RESPA, as held above, that Parker cannot sustain an action under ADTPA. ADTPA makes an "unconscionable, false, or deceptive act" unlawful and does not require that it already be unlawful under another statute.  Parker has alleged that PHH engaged in unfair and deceptive acts and has plead actual damages in that she was made to pay a $17.50 "convenience fee" and $89 in improper fees.  *See* Am. Compl. ¶¶ 40, 42.  Accordingly, PHH's motion to dismiss Parker's ADTPA claim is denied.

D.    Conversion

PHH's motion to dismiss Parker's conversion claim is denied.  The tort of conversion occurs when one commits "any distinct act of dominion wrongfully exerted over property in denial of, or inconsistent with, the owner's right." *Elliott v. Hurst*, 817 S.W.2d 877, 880 (Ark. 1991).  PHH moves to dismiss this count arguing that Parker has not plead that she paid any illegal fees and that the conversion claim should fail if the RESPA and TILA claims fail.  As set forth above, Parker has plead that she was made to pay improper fees.  *See* Am. Compl. ¶¶ 40, 42.  She has also plead that PHH unlawfully exercised dominion over her personal property and she was damaged. *Id.* ¶ 148.  Although Parker relies on her RESPA and TILA claims in alleging her conversion claim, she also generally alleges a state law claim of conversion that is independent of those two claims. *See id.*  Therefore, PHH's

motion to dismiss this claim is denied.

E.     Accounting

Parker seeks an injunction ordering PHH to provide an accounting for all charges, payments made by mortgagors, all costs and expenses, and trustee's and attorney's fees. Am. Compl. ¶ 152.   Equitable accounting is available only when there is no remedy available at law.  *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477-78 (1962).  In order to maintain an action for equitable accounting on a suit cognizable at law, such as this one, Parker must show that "the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them."  *Id.*  Parker has not pled that an adequate remedy is unavailable at law or that the accounts are so complicated that they can only be sorted out by a court in equity. Therefore, the motion to dismiss this count is granted.

F.     Other Equitable Remedies

Parker also seeks to enjoin PHH from continuing to engage in any further unlawful, unfair, unconscionable, and/or deceptive acts; and disgorgement of all wrongfully charged late fees collected.  In that some of the equitable remedies are sought on claims that have been dismissed and others on claims that have not been dismissed, PHH's motion to dismiss these equitable remedies is granted as to Parker's claims that have been dismissed and denied as to Parker's claims that have not been dismissed.

G.     Foreclosure Rights

Parker further seeks declaratory and injunctive relief in the form of a declaration that

11

PHH has no right to foreclose on any property where it has not complied with Arkansas's recording requirements. Am. Compl. ¶ 165. She also seeks an injunction against PHH from initiating any foreclosures in the state of Arkansas or sending any notices indicating an intent or right to foreclose on any property in Arkansas, where it has not recorded its interest. *Id.* ¶ 166. Parker also seeks an injunction prohibiting PHH from recording any mortgages, transfers, assignments, or notices of default and intent to sell relating to any mortgage that PHH held or serviced prior to filing of the amended complaint.

PHH moves to dismiss this count pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting that Parker lacks standing to bring these claims. Standing to bring a suit is a "threshold inquiry" and a "jurisdictional prerequisite that must be resolved before reaching the merits of a suit." *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). Standing requires an "injury in fact," "a causal connection between the injury and the conduct complained of," and a likelihood "the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Another part of the jurisdictional inquiry is the ripeness of the dispute. Article III of the United States Constitution limits courts to deciding actual cases and controversies, thus prohibiting courts from issuing advisory opinions. *Public Water Supply Dist. No. 8 of Clay County, Mo. v. City of Kearney, Mo.*, 401 F.3d 930, 932 (8th Cir. 2005). The ripeness doctrine applies to declaratory judgment actions like this one. *Public Water Supply Dist. No. 10 v. City of Peculiar*, 345 F.3d 570, 572 (8th Cir. 2003). While a declaratory judgment

12

action can be sustained if no injury has yet occurred, *County of Mille Lacs v. Benjamin*, 361 F.3d 460, 464 (8th Cir. 2004), before that claim is ripe, the plaintiff must face an injury that is "certainly impending," *South Dakota Mining Ass'n, Inc. v. Lawrence County*, 155 F.3d 1005, 1008 (8th Cir.1998). A claim is "not ripe for consideration if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998).

Parker argues that the Arkansas Declaratory Judgment Act, Ark. Code Ann. § 16-111-101, *et seq.*, provides her with a claim for seeking this declaration and points to *Harris v. CitiMortgage, Inc.*, 2006 WL 2711525, as support for her position. Parker's reliance on the *CitiMorgage* case is misplaced, however, as that case involved a active foreclosure proceeding. Further, although the Declaratory Judgment Act provides that parties with an interest in a deed, will or written contract may have a court determine a question of construction of the document, Ark. Code Ann. § 16-111-104, standing and ripeness requirements still remain. The statute may be invoked only when there is an actual controversy in which "the party seeking declaratory relief [has] a legal interest" and "the issue involved in the controversy must be ripe for judicial determination." *MacSteel Div. of Quanex v. Arkansas Oklahoma Gas Corp.*, 210 S.W.3d 878, 886 (Ark. 2005).

Parker has not alleged that a foreclosure is currently occurring or even that one is imminently threatening. Further, she has not alleged that she has an interest in any future foreclosure. Therefore, the motion to dismiss on this issue is granted.

13

IV. CONCLUSION

For the reasons stated above, PHH's motion to dismiss [Doc. No. 21] is granted in part and denied in part.  The motion to dismiss is granted on Parker's RESPA, TILA, accounting, equitable remedies as to RESPA and TILA, and declaratory relief claims and denied on her ADTPA, conversion, and equitable remedies as to all other claims claims. Parker is directed to file an amended complaint within 20 days of entry of this order to allege state common law and contractual duties breached by PHH in failing to credit her mortgage payment as of the date of receipt.

IT IS SO ORDERED this 3rd day of January 2012.

_____
UNITED STATES DISTRICT JUDGE